952 P.2d 748

**In re Joan K. HALL and Stanley E. Lalli, a minor child, Petitioners/Appellants,**

v.

**Joseph A. LALLI, Respondent/Appellee.**

**No. 2 CA–CV 96–0165.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 23, 1997.

Review Granted March 17, 1998.

---

Southern Arizona Legal Aid, Inc. by C. Quince Hopkins, Tucson, for Petitioners/Appellants.

Lawrence E. Condit, P.C. by Lawrence E. Condit, Tucson, for Respondent/Appellee.

### *OPINION*

ESPINOSA, Judge.

Petitioner/appellant Stanley Lalli, by and through his next friend and mother, Joan Hall, appeals from the trial court's order dismissing his paternity petition against respondent/appellee Joseph Lalli as barred by res judicata because of the previous dismissal of a paternity action against Lalli brought by the State of Arizona. For the reasons set forth below, we vacate the order of dismissal and remand for further proceedings.

### Background

Hall and Lalli divorced in 1978 after seven years of marriage. The decree awarded custody of their three minor children to Lalli and stated that Hall was not pregnant. Less than five months later, Hall gave birth to Stanley. Shortly thereafter, Hall began receiving Aid to Families with Dependent Children (AFDC) benefits. In November 1979, the state filed a "special paternity complaint" against Lalli, alleging he was Stanley's natural father and seeking past and future support. A few months later, the state moved to dismiss the complaint, attaching a handwritten letter apparently signed by Hall stating that Lalli was not Stanley's natural father and that she did not know Stanley's father's last name or his whereabouts. No hearing was requested or held and the court dismissed the complaint with prejudice in March 1980.

In September 1995, Hall filed her own paternity complaint against Lalli. He moved to dismiss pursuant to Rule 12(b)(6), Ariz. R.Civ.P., 16 A.R.S., alleging the complaint failed to state a claim upon which relief could be granted because her claim was barred by res judicata and collateral estoppel. In November, Stanley, through Hall as his next

friend, filed a motion to intervene, Rule 24(a), Ariz.R.Civ.P., and a separate "verified petition for paternity." The court granted Stanley's motion and Lalli amended his motion to dismiss, arguing that both Hall's complaint and Stanley's petition were barred by res judicata, collateral estoppel, waiver, and laches. Following a hearing at which neither Hall nor her attorney appeared, the trial court dismissed Hall's complaint and Stanley's petition on the grounds that the state's prior action involved the same claim and the same "parties or their privies," and the 1980 judgment of dismissal was therefore res judicata as to both Hall and Stanley. This appeal followed.[1]

## Standards of Review

In reviewing the trial court's dismissal of a claim under Rule 12(b)(6), we accept the allegations in the complaint as true and resolve all inferences in favor of the plaintiff. *Wallace v. Casa Grande Union High School District No. 82,* 184 Ariz. 419, 909 P.2d 486 (App.1995). We will uphold the dismissal only if it is certain that the plaintiff cannot prove any set of facts which would entitle him to relief. *Id.* Whether a claim is precluded as res judicata is a question of law, which we review de novo. *Phoenix Newspapers, Inc. v. Dept. of Corrections,* 188 Ariz. 237, 934 P.2d 801 (App.1997).

## Privity Between Parent and Child

Under the doctrine of res judicata, a final judgment, entered on the merits in a prior suit involving the same parties or their privies, bars a second suit on the same cause of action and is conclusive as to facts which actually were or could have been decided. *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 745 P.2d 617 (App.1987). In order for res judicata to apply, there must be a common "identity of the parties, the capacity in which they appear, the subject matter, and the cause of action." *Matusik v. Arizona Public Service Co.,* 141 Ariz. 1, 3, 684 P.2d 882, 884 (App.1984), *quoting El Paso Natu-*

*ral Gas Co. v. State,* 123 Ariz. 219, 222, 599 P.2d 175, 178 (1979).

Stanley argues that the trial court erred in finding his petition barred by res judicata because he was neither a party to the underlying action, nor in privity with either the state or his mother. For res judicata purposes, "[a] privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Aldrich and Steinberger v. Martin,* 172 Ariz. 445, 448, 837 P.2d 1180, 1183 (App. 1992) (citations omitted); *see also Garrett v. Holmes·Tuttle Broadway Ford,* 5 Ariz.App. 388, 427 P.2d 369 (1967). Whether there is privity between a parent and a child in this context is a somewhat novel question which appears to have been addressed in only one Arizona decision, *Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (App.1982), wherein Division One of this court found such privity to exist. Other jurisdictions have held that as a general rule, privity does not arise from the parent-child relationship. *See Ex parte Snow,* 508 So.2d 266 (Ala.1987); *Simcox v. Simcox,* 175 Ill.App.3d 473, 124 Ill.Dec. 915, 529 N.E.2d 1032 (1988); *Payne v. Cartee,* 111 Ohio App.3d 580, 676 N.E.2d 946 (1996); *Commonwealth Department of Social Services v. Johnson,* 7 Va.App. 614, 376 S.E.2d 787 (1989); *see also* Restatement (Second) of Judgments § 31 cmt. f (1982).

Relying on *Bill,* the trial court concluded that Stanley's petition involved the same issues and parties or their privies as the previous state action and was therefore barred. In *Bill,* the state brought a paternity action with the mother as the complaining witness. The mother and putative father stipulated that the paternity question would be resolved by a polygraph examination of the mother as to whether she had had sexual intercourse with anyone other than the putative father. After the mother failed the test, the state's action was dismissed with prejudice. The minor subsequently brought her own paternity action through her mother. Division One

---

1. Only Stanley filed a notice of appeal; consequently, the dismissal of Hall's complaint is not

at issue.

of this court upheld the dismissal, concluding that "the child's interests are inextricably bound to the litigation of a paternity action, whether brought in the name of the state, the mother or the guardian," and that "in addition to the cause of action in both suits being identical, the child's rights and interests are the same in each." 132 Ariz. at 523, 524, 647 P.2d at 654, 655.

Stanley urges us not to follow *Bill*, arguing its holding "belies the reality of the distinct interests of the potential litigants" and is undermined by its misinterpretation of *State v. Sax*, 231 Minn. 1, 42 N.W.2d 680 (1950),[2] to support the proposition that a mother and child are in privity in paternity actions. In *Sax*, the Minnesota Supreme Court upheld a mother's standing to appeal a paternity order in an action brought in the state's name, finding that the proceedings were "for the benefit of the mother as well as the child and the public." *Id.* at 684. Relying on this language, the *Bill* court reasoned that Arizona's paternity statutes

> evince an intention to benefit the public, mother and child, regardless of who is formally named a party. The state's main goal in a paternity suit is to divest itself of responsibility for supporting the child through various welfare programs. The mother's aim is assuredly economic as well. An order of filiation bears a concomitant obligation for the father to share in child-drearing expenses.

132 Ariz. at 523, 647 P.2d at 654. While recognizing that the child has "other independent interests" from the mother and the state, the court nonetheless concluded that regardless of who brings the action, "the issue to be litigated and the effect on the child's rights to support will be equal." *Id.*

Stanley argues that the *Bill* court "incorrectly lumped together" the issues of identity of claims and identity of parties, and points out that the Minnesota Supreme Court subsequently criticized *Bill*'s application of *Sax* in *Johnson v. Hunter*, 447 N.W.2d 871 (Minn. 1989). In that case, the court reversed a lower court's dismissal of a child's paternity action on res judicata grounds, noting that the parent-child relationship is "traditionally excluded from privity notions," *id.* at 874, and that *Sax* did not address the issue of a child's status for res judicata purposes. The court went on to observe that "an Arizona court" had cited *Sax* in precluding a child's paternity action, and inferentially faulted *Bill*'s emphasis on "the common economic interest of the state, mother and child, particularly the right to child support, rather than the other interests a child may have." *Id.* at 875. The court declined to accept the putative father's characterization of the child's interests "as mere 'incidental interests that are part of the package' of any paternity action," without addressing the child's "unique rights." *Id.* at 876. "Establishment of the parent-child relationship is the most fundamental right a child possesses, to be equated in importance with personal liberty and the most basic constitutional rights." *Id.*

We are persuaded that *Bill* focused too narrowly on the economic interests of the state and the mother, and not enough on the distinct and compelling interests of the child. Here, the state's interest in the underlying action was purely economic; it sought to recoup AFDC benefits it had paid, A.R.S. §§ 25–509 and 46–295, and to compel future support. §§ 25–803(A) and 25–809(A). Indeed, the state was expressly prohibited by § 25–803(B) from seeking or defending "any ancillary matters such as custody or visitation." The mother's interests also were solely economic in seeking past and future child support, § 25–809(A), and "the expenses for the lying-in, support of and attendance upon the mother during her confinement." § 25–809(B). While Stanley did have a similar interest in receiving support, his interests in a paternity action are much broader. Those interests include:

> inheritance rights, social security survivor benefits, employee death benefits, and in some instances, proceeds of life insurance policies. A child's interests may also in-

---

2. The *Bill* court looked to Minnesota law because Arizona's paternity statutes, as they existed at that time, were derived from those of Minnesota. 132 Ariz. at 522, 647 P.2d at 653; A.R.S. §§ 12–846 and 12–849, Historical and Statutory Notes (renumbered as §§ 25–806 and 25–809 by 1996 Ariz.Sess.Laws, ch. 192, § 14).

clude the establishment of familial bonds, indoctrination into cultural heritage, and knowledge of the family's medical history. *Marsh v. Rodgers,* 659 N.E.2d 171, 173 (Ind. App.1995), *quoting Clark v. Kenley,* 646 N.E.2d 76, 79 (Ind.App.1995). *Accord In re M.C.,* 895 P.2d 1098 (Colo.App.1994) (custody, inheritance, medical history); *Department of Human Services v. Comeau,* 663 A.2d 46 (Me.1995) (inheritance, identity, relationship); *Johnson v. Hunter* (psychological and emotional benefits, inheritance, medical support, causes of action, workers' compensation dependent benefits, veteran's education benefits); *Settle v. Beasley,* 309 N.C. 616, 308 S.E.2d 288 (1983) (inheritance, custody, medical history, relationship); *Commonwealth Department of Social Services v. Johnson,* 376 S.E.2d at 791 ("fundamental right" to establish father-child relationship); *In re Chad M.G.,* 194 Wis.2d 689, 535 N.W.2d 97 (App.1995) (inheritance, custody, relationship). *See also R.A.J. v. L.B.V.,* 169 Ariz. 92, 817 P.2d 37 (App.1991) (child's interests in paternity adjudication include inheritance rights and the establishment and maintenance of familial bonds).

The Arizona legislature has long recognized the importance of these diverse non-support interests in A.R.S. § 12–621, which enables a person to establish his or her identity, birthright, or parentage.[3] *See Backora v. Balkin,* 14 Ariz.App. 569, 485 P.2d 292 (1971) (purpose of § 12–621 action is to legally establish petitioner's identity). The divergence in respective interests is also reflected in the parties' requests for relief here. In contrast to the state's complaint seeking numerous forms of financial remuneration, Stanley's petition did not request any financial support, but only sought a declaration that Lalli is his father. *See In re M.C.* Thus, contrary to Lalli's repeated urging, the interests of Stanley, the state, and Hall in the underlying action were not the same, and that either the state or Hall was authorized to originate a paternity action under § 12–843 (now § 25–803) does not alter that conclusion.

Courts have observed that a mother's and a child's interests in a paternity determination not only differ, but may potentially conflict.

A mother may have a variety of reasons for not initiating paternity proceedings: she may have a continuing relation with or affection for the father; she may wish to avoid continuing any relation with the father, including child support; she may wish to avoid the disapproval of her family or the community that she believes a paternity action would produce; she may be subject to the emotional strain and confusion that often attend the birth of a child born out of wedlock and continue for a prolonged period, hindering any effort by her to seek child support; she may be able to support the child and not foresee a change in her circumstances.

*Johnson v. Hunter,* 447 N.W.2d at 875–76, *quoting In re R.W.L.,* 116 Wis.2d 150, 341 N.W.2d 682, 686 (1984). *See G.E.B. v. S.R.W.,* 422 Mass. 158, 661 N.E.2d 646, 651 (1996) (child cannot be bound by settlement of mother's claim because her "independent interests ... may prevent her from fully protecting the child's sometimes competing concerns"); *Department of Human Services v. Comeau* (differing interests of mother and child preclude privity when mother settles her action or permits it to be dismissed with prejudice); *cf. R.A.J. v. L.B.V.,* 169 Ariz. at 97, 817 P.2d at 42 ("a conflict of interest between the parties is inherent in these situations, which often leaves the child unprotected").

We note that, in pursuing the 1979 paternity action, neither the state nor Hall adequately represented Stanley's interests. When the state filed its paternity complaint,

---

**3.** A.R.S. § 12–621 provides:

A. When a person desires to establish his identity or fix his birthright and parentage, or both, he may file in the superior court in the county where his residence is maintained an application setting forth his reasons for desiring to establish his identity, birthright or parentage. The court may, after hearing the application, enter judgment establishing identity or birthright and parentage, or both, of such person.

B. The parent, guardian ad litem or next friend of a minor may file such application in the county where the minor's residence is maintained.

Hall was the obligatory complaining witness as a recipient of AFDC benefits. A.R.S. § 46–407. The state requested that Lalli be adjudged Stanley's father and sought reimbursement for past care and support, expenses for lying-in and support for Hall during her confinement, and a future support order. Stanley was only one year old at the time, had no guardian or attorney appearing for him, and had no control or influence over the litigation. The state sought dismissal of the complaint with prejudice before any actual determination of paternity was made, based on an unsworn handwritten note. "The likelihood that the child's interests might not be fully represented in a paternity action brought by a parent or the State is even greater where ... the action was not fully litigated and there was no judgment that the defendant was or was not the father." *Marsh*, 659 N.E.2d at 173. *See also Elacqua v. James EE*, 203 A.D.2d 688, 610 N.Y.S.2d 354 (1994).

In a different but analogous context, Division One has recognized that the absence of the child from a previous proceeding is a factor "that weighs against the application of issue preclusion." *State v. Powers*, 184 Ariz. 235, 237, 908 P.2d 49, 51 (App.1995). Holding that a mother's admission in a prior dissolution action did not bar a subsequent paternity action, the court noted:

> The Restatement states that, in questions of paternity,
>
>> the tendency is to hold open the possibility of establishing legitimacy and the right to support against any judgment except one which is based on full and fair litigation of the question and which involves the child himself as a party.

*Id.* at 237, 908 P.2d at 51, *quoting* Restatement (Second) of Judgments § 31 cmt. a (1982).

Lalli argues that allowing a previously uninvolved child to avoid preclusion may open the door to successive paternity actions against the same defendant, a prospect not contemplated by the paternity statutes and a concern of Division One in *Bill*. The Wisconsin Court of Appeals addressed this problem, recommending that

when a paternity action is initiated by a party, trial courts take affirmative steps to ensure that those persons whose similar interests remain unlitigated are added as additional parties. In this way, the first judgment will have preclusory effects on all individual parties to the action, and the courts and defendants will not be confronted with a series of sequential claims identical to previously resolved judicial matters. Taking steps to join the unnamed parties who have an interest in the determination should be neither difficult nor time consuming, and the benefits of fairness and judicial economy well support whatever additional expense may be required to litigate the rights of all parties in the initial action.

*In re Chad M.G.*, 535 N.W.2d at 100. *See R.A.J. v. L.B.V.*, 169 Ariz. at 96, 817 P.2d at 41 (child's "numerous interests" in outcome of paternity litigation require that child be joined as necessary party and court has equitable power to appoint guardian ad litem to represent child's interests). *See also* Unif. Parentage Act § 9, 9B U.L.A. 312 (1987) (adopted in several jurisdictions, including California, Colorado, and Washington; joinder of child and appointment of guardian ad litem required in all paternity proceedings).

We find the reasoning of *Chad* and that of a majority of courts that have addressed this issue, including Minnesota's, to be sound. Accordingly, we decline to follow *Bill* and instead hold that, under the circumstances of this case, Stanley was not in privity with the state or with Hall in the initial paternity proceeding when he was not a party to that action and his interests were not represented by a guardian ad litem or independent counsel. *See, e.g., County of Shasta v. Caruthers*, 31 Cal.App.4th 1838, 38 Cal.Rptr.2d 18 (1995); *In re M.C.; Marsh; G.E.B. v. S.R.W.; Johnson v. Hunter; Elacqua; Payne v. Cartee; Department of Health and Human Resources v. Pentasuglia*, 193 W.Va. 621, 457 S.E.2d 644 (1995); *In re SDM*, 882 P.2d 1217 (Wyo.1994). *But see Bradley v. Division of Child Support Enforcement*, 582 A.2d 478 (Del.1990). Consequently, Stanley is not barred by the doctrine of res judicata from pursuing his paternity petition against Lalli. In view of our resolution of this issue,

we need not address Stanley's arguments that *Bill* is "inconsistent" with subsequent amendments to the paternity statutes and scientific advances in paternity testing.

### Disposition

The trial court's order granting Lalli's motion to dismiss Stanley's petition is vacated and the matter is remanded for further proceedings. The parties shall bear their own attorneys' fees on appeal.

PELANDER, P.J., and HOWARD, J., concur.