977 P.2d 776

**In Re Joan K. HALL and Stanley E. Lalli, a minor child, Petitioners/Appellants,**

v.

**Joseph A. LALLI, Respondent/Appellee.**

**No. CV–97–0476–PR.**

Supreme Court of Arizona, En Banc.

April 13, 1999.

Southern Arizona Legal Aid, Inc. By: Paul D. Julien Eric D. Marsteller and Arizona Justice Institute By: William E. Morris, Tucson, Attorneys for Petitioners/Appellants.

Lawrence Edwin Condit, Tucson, Attorney for Respondent/Appellee.

**O P I N I O N**

FELDMAN, Justice.

¶ 1 In 1979, the state brought a paternity action against Joseph Lalli (Lalli) to determine if he was the father of Stanley Lalli (Stanley). Stanley was not named as a party, but the complaint did mention his mother, Joan Hall (Joan). The trial court dismissed the claim with prejudice. In 1995, Joan and Stanley brought a new paternity action against Lalli. The trial court dismissed both claims as barred by res judicata due to the 1979 dismissal. Stanley appealed, and the court of appeals reversed. We granted review to determine whether a child's paternity claim is barred by an earlier contrary judgment to which the child was not a party.

**FACTS**

¶ 2 Joan and Lalli were married in 1971. In 1978, Lalli filed a petition for dissolution of marriage in which he stated that he and Joan were the parents of three minor children and that Joan was not then pregnant. A default decree was entered against Joan, granting custody of the three children to Lalli. Four months later, Joan gave birth to Stanley.

¶ 3 In 1979, Joan was receiving Aid to Families with Dependant Children (AFDC). In November of that year, the State of Arizona brought a paternity action on Joan's behalf, seeking reimbursement from Lalli for the AFDC benefits paid Joan as Stanley's mother. A few months later, the state moved to dismiss the complaint, attaching Joan's handwritten letter that stated Lalli was "not the natural father of Stanley." The court dismissed the state's complaint with prejudice, in effect determining that Lalli was not Stanley's father.

¶ 4 In 1995, Joan brought a paternity action against Lalli, alleging he was and is Stanley's father. Because Stanley was still a minor, the trial court granted Joan's motion to intervene as Stanley's "best friend," thus joining him as a party. Lalli filed a motion to dismiss both Joan's and Stanley's claims, arguing they were barred by the doctrine of res judicata because the 1979 paternity action and the present case had been brought by the same "parties or their privies." In ruling on the motion, the trial judge relied on a case from Division One of our Court of Appeals as the dispositive law. *See Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649 (App. 1982) (concluding that minor child and her mother had been in privity at time of mother's earlier paternity action and child was therefore barred from bringing subsequent action against same man). Following *Bill*, the trial judge dismissed both claims. Only Stanley appealed the dismissal, arguing that he was neither a party to the 1979 proceeding nor in privity with the state or his mother. Disagreeing with *Bill*, Division Two of our Court of Appeals held that Stanley had *not* been in privity with any party to the 1979 action and thus res judicata did not bar his claim. *Hall v. Lalli*, 191 Ariz. 104, 109, 952

P.2d 748, 753 (App.1997). We granted review to resolve the conflict between our appellate divisions and to determine whether the doctrine of res judicata should be applied under these circumstances. Ariz.R.Civ. App.P. 23(c)(3). We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3).

## DISCUSSION

¶ 5 Because the court of appeals' opinion addressed only pure questions of law, we review de novo. *See, e.g., Scottsdale Unified Sch. Dist. v. KPNX Broadcasting Co.*, 191 Ariz. 297, 300, 955 P.2d 534, 537 (1998).

### A. Res judicata

¶ 6 Res judicata protects "litigants from the burden of relitigating an identical issue" and promotes "judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). This principle provides finality and deters harassment of former litigants. *See Circle K v. Industrial Comm'n*, 179 Ariz. 422, 426, 880 P.2d 642, 646 (App.1993). Due process, on the other hand, dictates that a party has the right to be heard. "It is a rule as old as the law that no one shall be personally bound until he has had his day in court...." *Phoenix Metals Corp. v. Roth*, 79 Ariz. 106, 109, 284 P.2d 645, 647 (1955) (quoting 12 AM.JUR. *Constitutional Law* § 573).

¶ 7 The doctrine of res judicata will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privities was, or might have been, determined in the former action. *Hall*, 191 Ariz. at 106, 952 P.2d at 750; *Aldrich & Steinberger v. Martin*, 172 Ariz. 445, 448, 837 P.2d 1180, 1183 (App.1992). The 1979 dismissal satisfies all factors except whether Stanley, who was not a named party to the first paternity action, was in privity with either the state or his mother.[1] If so, res judicata bars his present claim.

### B. Privity

¶ 8 Finding "[p]rivity between a party and a non-party requires both a 'substantial identity of interests' and a 'working or functional relationship' ... in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v. Rogers*, 229 Mich.App. 547, 582 N.W.2d 852, 854 (1998) (quoting *S.O.V. v. Colorado*, 914 P.2d 355, 360 (1996)). *Bill* was the first Arizona case that dealt with mother-child privity in a paternity action. Its essential facts are quite similar to those in the present case. The state and Bill's mother, as a complaining witness, sued Bill's putative father to establish paternity. The parties stipulated that the mother would take a polygraph test. If the examiners determined her answers were untruthful, the case would be dismissed with prejudice. On the other hand, if they determined her answers were truthful, the father would concede paternity and a support hearing would be held. 132 Ariz. at 519, 647 P.2d at 650. During the polygraph test, the only question posed to the mother was whether she had sexual intercourse with any man other than the putative father during the possible conception dates. The two examiners believed her negative response was untruthful. Thus, the state moved to dismiss the claim with prejudice, in accordance with the stipulation, and the trial judge granted the motion. When Bill subsequently brought her own paternity action, the putative father moved to dismiss, arguing res judicata and that the prior dismissal with prejudice barred the complaint. The trial judge agreed and dismissed. *Id.*

¶ 9 The *Bill* court acknowledged that the determinative question was whether mother and child had been in privity at the time of the previous paternity claim. Because the Arizona paternity statutes are derived from Minnesota's, the court found Minnesota's construction of its paternity statutes "particularly persuasive." *Id.* at 522, 647 P.2d at 653. The court relied on a Minnesota case,

---

1. We make two assumptions. First, we assume, as did the parties and the court of appeals, that Joan was a party to the 1979 case. Second, neither the parties, the trial judge, nor the court of appeals questioned whether a voluntary dismissal with prejudice acts as a judgment or adjudication on the merits for purposes of res judicata or issue preclusion. We do not, therefore, address the matter. *But see Circle K*, 179 Ariz. at 425–27, 880 P.2d at 645–47; WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2367 (1995).

stating "the proceedings are for the benefit of the mother as well as the child and the public." *Id.* at 523, 647 P.2d at 654 (quoting *Minnesota v. Sax*, 231 Minn. 1, 42 N.W.2d 680, 684 (1950)). The *Bill* court reasoned that the Arizona paternity statute [2] also served these combined and presumably identical interests by pursuing a single mutual objective—establishing paternity. *Id.* Thus, a child's interests are always represented whenever a paternity action is brought, regardless of who brings it. *Id.* The court therefore concluded that Bill had been in privity with her mother and the state so that Bill's subsequent paternity claim was barred by res judicata. *Id.* at 524, 647 P.2d at 655.

¶ 10 In the present case, Division Two reached the opposite conclusion, focusing on the issue of mother-child privity in a paternity suit. The *Hall* court noted that in *Johnson v. Hunter*, the Minnesota Supreme Court disagreed with *Bill*'s interpretation of *Sax*. 191 Ariz. at 107, 952 P.2d at 751. In *Sax*, the Minnesota court held merely that the mother was a party to a paternity proceeding and therefore entitled to appeal a support order. In *Johnson*, the court went on to discuss privity:

> An Arizona court cited our decision in *Sax* due to the similarity between Arizona's and Minnesota's (1969) paternity statutes and held that a prior dismissal of a state's paternity action was res judicata as to the child. [*Bill*], however, stressed the common economic interest of the state, mother and child, particularly the right to child support, rather than the other interests a child may have that are jeopardized in such a dismissal. . . . We cannot, however, so easily dismiss the significant interests at stake for a child in a paternity determination. . . . Depriving [a child] of the basic right to establish parental relations arguably would not comport with the constitutional protection granted illegitimate children.

447 N.W.2d 871, 875–76 (Minn.1989) (citations omitted). Thus, *Johnson* held that res judicata did *not* preclude the child's action when she was not a party to the previous action. 447 N.W.2d at 876–77.

¶ 11 We agree that *Johnson* weakened *Bill*'s authority by expressly disavowing *Bill*'s interpretation of *Sax*. Also, as Division Two noted, "[o]ther jurisdictions have held that as a general rule, privity does not arise from the parent-child relationship." *Hall*, 191 Ariz. at 106, 952 P.2d at 750, citing *Ex parte Snow*, 508 So.2d 266 (Ala.1987); *Simcox v. Simcox*, 175 Ill.App.3d 473, 124 Ill.Dec. 915, 529 N.E.2d 1032 (1988); *Payne v. Cartee*, 111 Ohio App.3d 580, 676 N.E.2d 946 (1996); *Virginia ex rel. Gray v. Johnson*, 7 Va.App. 614, 376 S.E.2d 787 (1989). Since the decision in *Hall*, more jurisdictions have expressly adopted this principle. *See Phinisee*, 582 N.W.2d at 854; *S.O.V.*, 914 P.2d at 361–62 & n. 10 (citing eleven cases from various jurisdictions in which it is "well recognized" that child's interests in paternity action differ from those of child's mother); *see also B.M.L. v. Cooper*, 919 S.W.2d 855 (Tex.App.1996) (holding that burden of proof was on father to show that child had been in privity with mother in prior proceeding).

¶ 12 In *Bill*, Division One concluded that mother and child were in privity because they both sought to establish paternity, a singular "mutual objective." 132 Ariz. at 523, 647 P.2d at 654. Privity, however, is not a result of parties having similar objectives in an action but of the *relationship* of the parties to the action and the *commonality* of their interests. *See Johnson*, 447 N.W.2d at 874. Even though a desired *objective* of all paternity suits is the same—to establish the defendant's paternity—each party's *interests* for doing so differ significantly. Parties with common objectives but disparate interests might pursue an action with varying degrees of diligence. Even when the interests of the parties apparently overlap, a court should determine if there are additional, separate interests that would prevent a finding of privity. *See, e.g., S.O.V.*, 914 P.2d at 361–62. Thus, we turn now to examine the commonality of the parties' interests to determine whether Stanley was in privity with the state or his mother.

### 1. State-child privity

¶ 13 We start by examining the interests of the child. The "[e]stablishment

2. A.R.S. § 12–849, now renumbered as § 25–809.

of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with ... the most basic constitutional rights." *Johnson*, 447 N.W.2d at 876 (quoting *Ruddock v. Ohls*, 91 Cal.App.3d 271, 154 Cal.Rptr. 87, 91 (1979)). While the child has an interest in support during minority, there are other important rights to be considered. *See Phinisee*, 582 N.W.2d at 854 n. 6. The child's interests are broader than all others and include claims to inheritance, medical support, and other matters. *Johnson*, 447 N.W.2d at 875 (also listing personal cause of action, workers' compensation dependent's allowance, and veteran's educational benefits); *see Marsh v. Rodgers*, 659 N.E.2d 171, 173 (Ind.App. 1995) (interest in accurate family medical history). Additionally, an accurate determination of paternity results in intangible psychological and emotional benefits for the child, including establishing familial bonds and learning of cultural heritage. *See, e.g., Hall*, 191 Ariz. at 107–08, 952 P.2d at 751–52; *Minnesota ex rel. Kremin v. Graham*, 318 N.W.2d 853, 855 n. 4 (Minn.1982). We agree with Division Two and these well-reasoned decisions that a child's interest in determining his or her father is fundamental, unique, and broader than the interests of all others.

¶ 14 Of the many parties wanting to establish Stanley's paternity, the interests of the state are the most simple to define. In general, the state pursues a child's paternity not only because it desires to see that " 'justice is done,' ... [but] also ... to reduce the number of individuals forced to enter the welfare rolls." *Mills v. Habluetzel*, 456 U.S. 91, 103, 102 S.Ct. 1549, 1557, 71 L.Ed.2d 770 (1982) (O'Connor, J. concurring, four justices joining). The state initiated the 1979 action against Lalli for "purely economic" reasons—to establish his fiscal responsibility and terminate Joan's reliance on AFDC. *Hall*, 191 Ariz. at 107, 952 P.2d at 751. Thus, Stanley and the state shared that one important, overlapping interest. Sixteen years later, however, Stanley brought this action to establish his familial status, apparently for reasons other than support. *Id.* Regardless of any common financial interest, Stanley has other significant interests that prevent finding a commonality of interests between him and the state. Thus, a finding of privity is precluded.

**2. Mother-child privity**

¶ 15 A mother's interests in bringing a paternity action include securing financial assistance to raise her child and gaining the ability to legally enforce the father's support obligation. Of course, a mother also has emotional and psychological interests in establishing her child's paternity. These may include, for example, a lessened burden from sharing the responsibility of physical custody and tending to the child's emotional and developmental needs.

¶ 16 It is important to remember, however, that parental relationships are triangular; not only does each parent have a relationship with the child, but the parents also have a relationship with each other. *See* Carl W. Gilmore, *Independent Evidence: A New Tool for Paternity Cases*, 86 ILL. B.J. 476, 480 (1998). As a result, even if the mother's interests appear to be aligned with the child's, she is often subject to pressures from her relationship with the father. These pressures may affect her decision to proceed with a paternity suit. A mother may decide to dismiss a pending paternity suit because she may hope for a continuing relationship with the father, or because her relationship with the father has deteriorated to the point that she wants to avoid contact with him. There may be pressure from community or family disapproval of the father, the relationship, or the paternity action. The mother may be deterred by the trouble, difficulty, and expense of maintaining the lawsuit and decide that she wants and has the means to raise the child independently. Moreover, the putative father may offer the mother an amount sufficient to induce her to settle the claim without an adjudication. *See, e.g., Johnson*, 447 N.W.2d at 875.

¶ 17 As illustrated by the list above, "a mother's and a child's interests in a paternity determination not only differ, but may potentially conflict." *Hall*, 191 Ariz. at 108, 952 P.2d at 752. While assuming that most mothers are dedicated to pursuing the best interests of their children, we must also acknowledge that a mother's perception of

what is best for her child will often be affected by factors unique to her. Recognizing that many mothers face significant personal obstacles when pursuing paternity claims, we cannot expect them to always protect only their child's interests and ignore their own. *See G.E.B. v. S.R.W.*, 422 Mass. 158, 661 N.E.2d 646, 651 (1996) (a mother's independent interests "may prevent her from fully protecting the child's sometimes competing concerns"); *R.A.J. v. L.B.V.*, 169 Ariz. 92, 96, 817 P.2d 37, 41 (App.1991) (because conflicts of interest are inherent in paternity case, leaving parent to represent her child may leave child's rights unprotected).

¶ 18 Thus, although a mother's concerns are more substantial than those of the state, we conclude that the fundamental and unique nature of the child's interests cannot always be adequately represented by the mother, who may have differing, even conflicting interests. We agree with *Hall* that a mother and child lack the necessary commonality of interests to find them in privity.

## C. Preventing multiple paternity determinations

¶ 19 Res judicata promotes finality and consistency. *See Circle K*, 179 Ariz. at 426, 880 P.2d at 646. Lalli argues that Division Two's opinion subverts that policy because it allows two separate paternity actions to be brought at different times against one man. But even considering the burden and possible harassment resulting, other courts have concluded that "these concerns are outweighed ... by the paramount interests of a child in an adjudication on the merits of paternity." *Johnson*, 447 N.W.2d at 876. In considering the equities, we note that new procedures and developments in law and science significantly mitigate the potential burden of multiple litigation.

### 1. Joinder of child at initial paternity proceeding

¶ 20 Modern procedural rules require joinder of a party who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede [his] ability to protect that interest." Ariz.R.Civ.P. 19(a). In the specific context of a paternity suit, many dangers of multiple litigation can be avoided by joining the child to the first action. *See Hall*, 191 Ariz. at 109, 952 P.2d at 753; *R.A.J.*, 169 Ariz. at 96, 817 P.2d at 41; *see also Kieler v. C.A.T.*, 616 N.E.2d 34 (Ind.App.1993) (observing that paternity defendant could have avoided problems had children been joined as necessary parties to first action). Moreover, because the child's interests potentially conflict with those of other parties involved, a guardian ad litem and independent counsel may be appointed to protect the child's interests. *See* Ariz.R.Civ.P. 17(g); *R.A.J.*, 169 Ariz. at 96–97, 817 P.2d at 41–42. This, of course, depends on the identity of the other parties to the litigation and whether the child's interests can be fully, objectively, and disinterestedly represented. Given that we have identified the child's interests as distinct from those of the state and mother, we are reluctant to adopt a rule that such parties are always privies and representatives of the child, at least while they are also pursuing their own interests.

### 2. Equitable considerations

¶ 21 The *Hall* court cited two equitable considerations to support its holding. The first cite was to an important section of the RESTATEMENT (SECOND) OF JUDGMENTS (RESTATEMENT):

> [C]onclusive effect should not be given to a *status determination in resolving another person's rights or obligations in which the status is an operative element*, if doing so would impair an interest arising from a just reliance interest or otherwise result in substantial injustice. Some earlier authorities insisted that a judgment determining status must necessarily be conclusive on "all the world" if it was to be conclusive beyond the parties in any way. More carefully considered authorities, however, recognize that a status judgment can be treated as effective at large without enforcing all its legal ramifications, and that *treating it as operative when the interests of others are involved should depend on considerations of equity and good conscience.*

RESTATEMENT § 31 cmt. f (emphasis added); *see also State ex rel. Dep't of Econ. Sec. v. Powers,* 184 Ariz. 235, 237, 908 P.2d 49, 51 (App.1995) (discussing RESTATEMENT § 31 cmt. a and stating that absence of child from former proceeding weighs against application of issue preclusion).[3]

¶ 22 The second cite was to the Uniform Parentage Act (UPA). Although the UPA has not been legislatively adopted in Arizona, our courts have found its policies persuasive. *See Stephenson v. Nastro,* 192 Ariz. 475, 480, 967 P.2d 616, 621 (App.1998); *Ban v.Quigley,* 168 Ariz. 196, 199, 812 P.2d 1014, 1017 (App. 1990). Keeping the child's interests at the forefront, the UPA provides that the child is an indispensable party to a paternity action. *See S.O.V.,* 914 P.2d at 360–61 (referring to Colorado's adopted version of the UPA). The UPA also requires that a guardian ad litem be appointed to represent the child's interests. *Id.*

### 3. Blood testing in paternity cases

¶ 23 We believe the burdens of consecutive or multiple litigation have been considerably lessened by scientific developments since *Bill* was decided. Arizona has adopted the following presumption:

> If the results of the blood tests indicate that the likelihood of the alleged father's paternity is ninety-five per cent or greater, the alleged father is presumed to be the parent of the child and the party opposing the establishment of the alleged father's paternity shall establish by clear and convincing evidence that the alleged father is not the father of the child.

A.R.S. § 25–807(D).

¶ 24 Blood tests carry great weight in paternity determinations because "the results do not depend upon a party's testimony and because the tests are verifiable." Gil-more, *supra,* 86 ILL. B.J. at 477. Before the use of blood tests, juries were often left to determine paternity by resolving the conflicting testimony of adverse witnesses, considering marital status of the parents, and examining the physical likeness of the defendant and the child. *See* Ronald J. Richards, Comment, *DNA Fingerprinting and Paternity Testing,* 22 U.C. DAVIS L.REV. 609, 611 n. 6 (1989). When blood tests were first used, the results placed the child and the father into certain categories based on blood characteristics. While the result could exclude the possibility that a particular man was the child's father, it could not affirmatively establish a single man as a father but could only narrow the class of potential fathers to those who shared the same blood characteristics. *Id.* at 612. A newer blood test, human leukocyte antigen tissue typing (HLA testing), identifies more specific blood characteristics and can establish parentage to ninety-eight percent probability. *Id.* at 612–13 n. 11. Modern DNA fingerprinting boasts even greater accuracy; by mapping the DNA of the mother and the child, the test comes closer than any other in positively identifying a child's father. *Id.* at 613, 620–24, & 627–28 n. 56.

¶ 25 The availability and accuracy of today's blood testing and the statutory presumption created by § 25–807(D) will forestall the filing of many paternity cases and dispose of many others by summary judgment. Thus, even if a man's paternity is relitigated for the benefit of the child, chances are the claim will often be quickly resolved by testing rather than by long, harassing litigation.

¶ 26 Balancing the factors discussed, we conclude that the rule adopted in *Hall* is best. We disapprove of *Bill*'s analysis and

---

3. A paternity action is, of course, a status determination. When the 1979 action was brought, Stanley was a thirteen-month-old infant *without independent counsel or guardian ad litem.* We, like the *Hall* court, find this significant. 191 Ariz. at 109, 952 P.2d at 753; *see County of Shasta v. Caruthers,* 31 Cal.App.4th 1838, 38. Cal.Rptr.2d 18, 21 (1995) (child could bring paternity action despite fact that mother previously settled her own action against father); *In re M.C.,* 895 P.2d 1098 (Colo.App.1994); *Marsh,* 659 N.E.2d at 173; *G.E.B.,* 661 N.E.2d at 651;

Johnson, 447 N.W.2d at 874 (finding it too "troublesome" to hold that unrepresented infant was party or in privity to prior paternity action); *Elacqua v. James EE,* 203 A.D.2d 688, 610 N.Y.S.2d 354 (N.Y.App.1994); *Payne v. Cartee,* 111 Ohio App.3d 580, 676 N.E.2d 946 (1996); *West Virginia Dep't of Health & Human Resources ex rel. Cline v. Pentasuglia,* 193 W.Va. 621, 457 S.E.2d 644 (1995); *In re SDM,* 882 P.2d 1217 (Wyo.1994); *but see Bradley v. Division of Child Support Enforcement ex rel. Patterson,* 582 A.2d 478 (Del.1990).

**62**

reject the view that a child is in privity with either the state or its mother in the context of a paternity action. In the future, a child not joined to a paternity action will not be precluded by its disposition. Thus, like Stanley, such a child may bring his or her own subsequent action to establish paternity. We believe this rule will vindicate the rights and interests of children without unduly burdening putative fathers with harassing, repetitive actions.

## CONCLUSION

¶ 27 The danger of multiple actions feared by the older cases, such as *Bill*, are now largely obviated by modern procedure and pleading. Any party to a paternity proceeding can move for appointment of a guardian ad litem for the minor child whose status is at issue and have the child joined in the action.[4] Finally, new DNA blood analysis makes the disposition of such actions much less onerous than it was when *Bill* was decided.

¶ 28 Thus, the court of appeals' opinion is approved. The trial court's judgment dismissing Stanley's claim as barred by res judicata is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice, concur.

---

4. Ariz.R.Civ.P. 19(a)(2)(i) and (ii) permits any party to move for joinder when as a practical matter a person's absence may

 impede the person's ability to protect [his or her] interest [or] (ii) leave any of the persons already subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in the proper case, an involuntary plaintiff.