189 P.3d 1102

In re the Marriage of Bonnie Sue PETTIT, Petitioner/Appellee,

v.

Christopher Marc PETTIT, Respondent/Appellant.

No. 1 CA–CV 07–0275.

Court of Appeals of Arizona, Division 1, Department A.

June 3, 2008.

**530**

Wilson–Goodman & Fong, P.C. By Angela M. Wilson–Goodman, Gilbert, Attorneys for Respondent/Appellant.

Sternberg & Singer, Ltd. By Melvin Sternberg, Phoenix, Attorneys for Petitioner/Appellee.

## OPINION

HALL, Judge.

¶ 1 During divorce proceedings, Christopher Marc Pettit (Father) admitted that the parties had "one minor child of the marriage." The decree of dissolution contained a similar finding and ordered Father to pay monthly child support. Two years later, Father moved for orders requiring paternity testing and stopping an order of assignment of his wages to pay child support. The family court denied these requests and Father appealed. We conclude that Father's paternity was established by the dissolution decree and that he is precluded from now claiming that he is not the biological father of the minor child.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The child who is the subject of this case (Daughter) was born in 1996 while Father

and Bonnie Sue Pettit (Mother) were living together. Three years later, Father and Mother married. On August 29, 2002, Mother filed a petition for dissolution of marriage. In the petition, Mother alleged that Daughter was a child of the marriage, and Father admitted that allegation in his response, in which he also requested that the parties be awarded joint legal custody and that he be granted primary physical custody. The decree of dissolution filed October 19, 2004 found that Daughter was a child of the marriage, ordered Father's name be added to Daughter's birth certificate, awarded sole custody of Daughter to Mother, gave Father supervised parenting time, and ordered Father to pay child support. When Father did not appeal from the decree, it became a final judgment.

¶ 3 In October 2006, while Mother's request to enforce child support was pending, Father filed a motion for an order requiring paternity testing and a motion for an order stopping the wage assignment. After both motions were summarily denied, Father filed another motion for an order requiring paternity testing in which he asserted that "[i]nformation has come to light to give [Father] reasonable doubt as to his paternity of [Daughter]," and another petition to stop the wage assignment "until such time as [Father] is or is not deemed to be the natural father of the parties' minor child." These motions were also denied in a signed order filed February 6, 2007. The court explained its denial of Father's motions as follows:

> These parties were married at the time of the child's birth; paternity is therefore presumed and this Court proceeded through the dissolution with no party raising the issue of paternity; presumably Respondent is the only father this child knows and it would not be in the child's best interest to disturb the *status quo.*

Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(C) (2003).

## DISCUSSION

¶ 4 Father argues that the presumption of paternity relied on by the family

court is inapplicable because the parties were not "married at any time in the ten months immediately preceding the birth" of Daughter as required by A.R.S. § 25–814(A)(1) (2007).[1] Mother does not dispute the inapplicability of the presumption but maintains that Father's status as Daughter's biological father was determined in the dissolution decree and he is therefore barred by the doctrine of claim preclusion, formerly referred to as res judicata,[2] from disestablishing his paternity. Although the doctrine of claim preclusion was not relied on by the family court in denying Father's requests, we will affirm the court's ruling on any legal theory supported by the record. *Cross v. Cross*, 94 Ariz. 28, 31, 381 P.2d 573, 575 (1963). Claim preclusion is a question of law and is therefore reviewed de novo. *Phoenix Newspapers, Inc. v. Dep't of Corrs.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (App.1997).

Under the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. This doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points which might have been litigated.

1. Section 25–814(A) provides:

   A man is presumed to be the father of the child if:
   1. He and the mother of the child were married at any time in the ten months immediately preceding the birth or the child is born within ten months after the marriage is terminated by death, annulment, declaration of invalidity or dissolution of marriage or after the court enters a decree of legal separation.
   2. Genetic testing affirms at least a ninety-five per cent probability of paternity.
   3. A birth certificate is signed by the mother and father of a child born out of wedlock.
   4. A notarized or witnessed statement is signed by both parents acknowledging paternity or separate substantially similar notarized or witnessed statements are signed by both parents acknowledging paternity.

2. The term "res judicata" is now understood as encompassing both claim preclusion and the related concept of issue preclusion. *See* Restatement (Second) of Judgments, introductory note

*Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987) (citation omitted), abrogated by statute on other grounds as noted in *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 508 n. 7, ¶ 25, 990 P.2d 1061, 1067 n. 7 (App.1999); *see also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.").

¶ 5 Father asserts that the doctrine of claim preclusion is inapplicable for three reasons: (1) the family court lacked subject-matter jurisdiction to make determinations regarding Daughter because she was not born during the marriage; (2) dissolution of marriage and the establishment of paternity are separate and distinct causes of action; and (3) the issue of paternity was not raised in the dissolution proceedings. We address each argument in turn.

¶ 6 Father asserts that the family court lacked subject-matter jurisdiction to enter orders regarding custody and child support because Daughter was not born during the marriage. Therefore, according to Father, the court was not a "competent jurisdiction" and its rulings have no preclusive effect.[3] We disagree.

¶ 7 The premise of Father's argument—that a trial court's subject-matter jurisdiction

to ch. 3 (1982); *see also Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255, 257 n. 3 (2002) ("As it has been used in recent jurisprudence, the doctrine of res judicata generally encompasses two concepts: claim preclusion and issue preclusion."); *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999) ("Res judicata consists of both claim preclusion and issue preclusion."). All the cases to which we refer in this opinion use the term in its traditional sense as synonymous with claim preclusion.

3. Father's request for paternity testing pursuant to A.R.S. § 25–807 (2007), which requires a court to order testing if requested by a party to paternity proceedings, constituted a collateral attack on the dissolution decree. *See Dockery v. Cent. Ariz. Light & Power Co.*, 45 Ariz. 434, 445, 45 P.2d 656, 660 (1935) ("[W]here an action has for its primary purpose the obtaining of independent relief, and the vacating or setting aside of a judgment is merely incidental thereto, such action is not a direct, but a collateral, attack upon the judgment."); *see also Bill By and Through Bill v. Gossett*, 132 Ariz. 518, 520, 647 P.2d 649,

is limited to children of the parties born *during* the marriage—is incorrect. A family court is required to provide in a decree of dissolution for "the support of any natural or adopted child *common to the parties of the marriage* entitled to support." A.R.S. § 25–312(4) (2007) (emphasis added). Although the petition for dissolution alleged, and the decree of dissolution recited, that "[t]he parties have 1 minor child born of this marriage, namely, [Daughter]," the circumstance that Daughter was actually born more than ten months before the parties' marriage is not determinative of the court's jurisdiction; it simply renders the presumption of paternity pursuant to § 25–814(A)(1) inapplicable. Rather, as provided by § 25–312(4), the court had subject-matter jurisdiction to make determinations regarding custody and support of Daughter if she was "common to the parties of the marriage," i.e., if she was the biological child of Mother and Father. Likewise, A.R.S. § 25–320(A) (2007) provides that "[i]n a proceeding for dissolution of marriage, ... the court may order either or both parents owing a duty of support to a child, *born to* or adopted by *the parents*, to pay an amount reasonable and necessary for the support of the child ..." (Emphasis added.) Further, as noted by our supreme court in *Milam v. Milam*, a separate paternity suit is not necessary when, as here, "paternity is admitted by the natural parents in a divorce action, for there appears no legitimate grounds in public policy or otherwise why the admissions of paternity in a divorce action should not give the court jurisdiction to

award support under [the statutory predecessor to § 25–320(A)]." 101 Ariz. 323, 325, 419 P.2d 502, 504 (1966). Accordingly, we reject Father's argument that the family court was not jurisdictionally competent to enter orders regarding Daughter.

¶ 8 Father next asserts that the dissolution decree does not prevent him from contesting his paternity of Daughter because his request for paternity testing is a separate and distinct cause of action from the divorce proceedings. To determine whether a second cause of action is the *same* as the first, Arizona follows the "same evidence" test from the Restatement of Judgments § 61 (1942) ("[T]he plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action."). *Phoenix Newspapers, Inc.*, 188 Ariz. at 240, 934 P.2d at 804. As explained by our supreme court in *Rousselle v. Jewett*:

> Only such matters are adjudicated in a former judgment which appear upon its face to have been adjudicated or which were actually and necessarily included therein or necessary thereto. Rights, claims, or demands—even though they grow out of the same subject matter— which constitute separate or distinct causes of action not appearing in the former litigation, are not barred in the latter action because of res judicata.

101 Ariz. 510, 512, 421 P.2d 529, 531 (1966).

¶ 9 Applying the "same evidence" test here, we readily conclude that Father's re-

651 (App.1982) (characterizing filing of second paternity action after first action was dismissed with prejudice as collateral attack upon former judgment), *disapproved of on other grounds by Hall v. Lalli*, 194 Ariz. 54, 977 P.2d 776 (1999). For purposes of this opinion, we assume, without deciding, that the doctrine of claim preclusion does not prevent a party from collaterally attacking a former judgment if it was entered by a court lacking subject-matter jurisdiction. *See Lamb v. Superior Court*, 127 Ariz. 400, 403 n. 4, 621 P.2d 906, 909 n. 4 (1980) (stating general rule that judgments rendered by a court lacking subject-matter jurisdiction are void). *But see, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, re-

open that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal."); *O'Neill v. Simpson*, 958 P.2d 1121, 1123 (Colo.1998) (same); *Langdon v. Saga Corp.*, 597 P.2d 1226, 1227 (Okla.App.1979) ("[W]hile parties may not consent to subject matter jurisdiction, res judicata precludes collateral attack on final judgments wherein the court had personal jurisdiction of the parties even as to issues of subject matter jurisdiction."); *In re Marriage of Boer*, 28 Or.App. 347, 559 P.2d 529, 530 (1979) (holding that ex-husband may not collaterally attack divorce decree reciting that the child was "of the marriage" on the ground that the court lacked jurisdiction to order him to pay child support because he was not the biological father).

quest for paternity testing is an attempt to relitigate one of the same matters necessarily adjudicated in Mother's divorce action. In her petition for dissolution, Mother alleged that Daughter was a "child of the marriage" and requested that she be awarded sole custody with Father to receive "reasonable parenting time" and that Father be ordered to pay child support. In his answer, Father admitted that Daughter was born during the marriage, sought joint legal custody, and requested that he be designated "primary residential parent" and that an appropriate child-support order be entered. In the decree of dissolution filed October 19, 2004 the court found that Daughter was a child of the marriage, ordered that Father's name be added to Daughter's birth certificate, awarded sole custody of Daughter to Mother, gave Father supervised parenting time, and ordered Father to pay child support.[4] Thus, although the statutory presumption of paternity was inapplicable, we conclude, as have courts in other jurisdictions, that Father's paternity of Daughter was "actually and necessarily" implied in the decree and that any further litigation on his part to disestablish paternity is not a "separate or distinct" cause of action. *See, e.g., DeVaux v. DeVaux,* 245 Neb. 611, 514 N.W.2d 640, 644 (1994) (holding that minor child's paternity was "directly addressed or necessarily included in the parties' dissolution proceeding"); *Peercy v. Peercy,* 154 Colo. 575, 392 P.2d 609, 611 (1964) (paternity is an "incidental fact" in a divorce decree requiring father to pay child support); *Baum v. Baum,* 20 Mich.App. 68, 173 N.W.2d 744, 747 (1969) (support order arising from a divorce constitutes an adjudication of paternity).

¶ 10 Finally, Father's argument that he is not barred from litigating his paternity of Daughter because it was not actually litigated in the divorce proceeding is flawed. Unlike issue preclusion, which applies only to issues that were actually litigated, *see Hullett v. Cousin,* 204 Ariz. 292, 297–98, ¶ 27, 63

P.3d 1029, 1034–35 (2003), a second claim is precluded "not only upon facts actually litigated but also upon those points which might have been litigated." *Gilbert,* 155 Ariz. at 174, 745 P.2d at 622; *see also Fraternal Order of Police v. Superior Court,* 122 Ariz. 563, 565, 596 P.2d 701, 703 (1979); *Hall v. Lalli,* 191 Ariz. 104, 106, 952 P.2d 748, 750 (App.1997), *aff'd,* 194 Ariz. 54, 977 P.2d 776. Had Father opted to do so, he could have contested Mother's claim for child support in the divorce proceedings by denying paternity and requesting that the court order blood testing pursuant to Arizona Rule of Civil Procedure 35(a) to determine whether he is the biological father of Daughter. *See Antonsen v. Superior Court,* 186 Ariz. 1, 7, 918 P.2d 203, 209 (App.1996) (holding that "even if [the statutory predecessor to A.R.S. § 25–807(C)] had no application in the dissolution action, mother established 'good cause' for such testing under Rule 35(a) by her allegations that husband is not the child's father"); *see also Younkin v. Younkin,* 221 Neb. 134, 375 N.W.2d 894, 899 (1985) (applying Nebraska's analogue to Rule 35(a): "Under that rule, it is proper to order blood grouping to aid the court in a divorce action in determining whether a husband is the father of a child."); *State v. Summers,* 489 S.W.2d 225, 227–28 (Mo.App.1972) (finding failure to order testing reversible error when paternity was essential element in child-support action). Because Father could have raised his non-paternity as a defense in the dissolution action, he is precluded from now doing so, although a valid test might conclusively demonstrate whether he is Daughter's biological father. *See Fraternal Order of Police,* 122 Ariz. at 565, 596 P.2d at 703 ("The fact that the issue may have been decided incorrectly does not affect the principle of *res judicata.");* *see also* Restatement (Second) of Judgments § 18 cmt. a ("It is immaterial whether the defendant had a defense to the original action if he did not rely on it.").

---

4. All issues regarding Daughter were resolved by the parties' agreement placed on the record at a hearing to comply with Arizona Rule of Civil Procedure 80(d), during which Mother also provided jurisdictional testimony and clarified that Daughter was born before the parties married

and that "both [Mother] and Mr. Pettit acknowledge that he is her father." *Cf. In re Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source,* 212 Ariz. 64, 70 n. 8, ¶ 14, 127 P.3d 882, 888 n. 8 (2006) (principle of claim preclusion applies to consent judgments).

¶ 11 Both parties have requested attorneys' fees on appeal pursuant to A.R.S. § 25–324 (Supp.2007). We exercise our discretion by awarding Mother her reasonable attorneys' fees upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 12 The dissolution decree necessarily established that Daughter was the biological child of Father. Accordingly, the doctrine of claim preclusion bars Father from pursuing a second action to disprove his paternity. We, therefore, affirm the family court's order denying Father's request for paternity testing.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and G. MURRAY SNOW, Judge.

