In re Bernadette MORENO, f/k/a Bernadette Bruce–Moreno Debtor.

Digital Systems Engineering, Inc., Plaintiff,

v.

Bernadette Moreno, Defendant.

Bankruptcy No. 08–15204.
Adversary No. 09–08.

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 17, 2009.

Roy L. Prange, Jr., Quarles & Brady LLP, Madison, WI, for Plaintiff.

Timothy J. Peyton, Kepler & Peyton, Madison, WI, for Defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Digital Systems Engineering, Inc. moved for summary judgment on its § 523(a)(2), (4), and (6) claims. Moreno opposed the motion, and after a hearing, I took the matter under advisement. DSE's motion for summary judgment is granted for the following reasons.

DSE filed an amended complaint against Bernadette Moreno and her husband, John Moreno, in Arizona state court on August 24, 2007. The complaint alleged, among other counts, fraud, unjust enrichment, and unlawful acts.[1] The state court granted DSE's motion for partial summary judgment as to both defendants on Counts III (fraud) and IV (unjust enrichment) on September 11, 2008.[2] Bernadette Moreno

---

1. Among the unlawful acts alleged in the amended complaint are theft, fraudulent schemes and artifices, and racketeering.

2. The state court memorialized this decision with a written minute entry that states: "Plaintiffs' Motion for Partial Summary Judgment as to Counts III (Fraud) and Count IV (Unjust Enrichment) of Its Complaint and as to Defendants' Counterclaim is Granted for the reasons stated in the Motion and the Reply."

filed a chapter 7 petition on October 1, 2008, and the state court stayed its proceedings as to her. On May 11, 2009, the state court issued Findings of Fact and Conclusions of Law as to DSE's racketeering claim against John Moreno after a trial.[3] In that decision, the state court ordered that judgment be entered against the marital community and found that Bernadette Moreno "engaged in schemes or artifices to defraud DSE" and that "[t]he intent and purpose of the Schemes or Artifices to Defraud and the Acts of Theft were to benefit the Morenos' community interests." In its Conclusions of Law, the state court noted that it had "granted DSE's motion for judgment on fraud and unjust enrichment based on Bernadette Bruce–Moreno's theft of at least $299,948.44 from DSE through fraudulent transactions."

The State of Arizona, alleging theft, commenced criminal proceedings against Bernadette Moreno during the pendency of the civil proceedings. As a result, she has invoked the Fifth Amendment's privilege against self-incrimination during the state court proceedings, including at her deposition and during the pendency of DSE's motion for summary judgment on the fraud and unjust enrichment counts. However, her counsel also filed a 12–page brief and a 4–page statement of facts in opposition to DSE's motion, and a motion to strike an affidavit submitted by DSE in support of its motion for summary judgment. Her counsel apparently argued against the motion at a hearing notwithstanding her invocation of the privilege against self-incrimination.

■■■■ Federal courts are required to give state court judgments the same preclusive effect that the judgments otherwise have in state court. *See Dollie's Play-*

*house, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.),* 481 F.3d 998, 1000 (7th Cir.2007) ("The Full Faith and Credit Act requires that we apply Illinois law and recognize the preclusive effect of the previous Illinois state judgment in this proceeding."); *see also Crop–Maker Soil Servs., Inc. v. Fairmount State Bank,* 881 F.2d 436, 439 (7th Cir.1989) ("The doctrine of res judicata applies in the bankruptcy context."). This is subject only to the requirement that the state court proceeding meet "the minimum requirements of due process." *Dollie's Playhouse,* 481 F.3d at 1001.

■■■■ In Arizona:

Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment.

*Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 716 P.2d, 28, 30 (1986). In addition, "[w]hen an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." *Id.*

In this case, there is no question that the parties are identical. The disputed issues appear to be whether the court entered a final judgment, whether the issue was actually litigated, whether Bernadette Moreno had a full opportunity to litigate the matter, and whether the state court reached issues essential to its judgment that would support a finding of nondischargeability.

---

3. The state court specifically stated in its final judgment, entered on July 20, 2009, that DSE's claim for racketeering "against defen-

dant John Moreno" had "come before the court for trial."

490

A signed minute entry order filed with the clerk of court "constitutes an appealable order." *Focal Point, Inc. v. Court of Appeals of State of Ariz., Div. One*, 149 Ariz. 128, 717 P.2d 432, 433–34 (1986). But a minute entry granting summary judgment is not appealable "until the entry of final judgment." *See Rourk v. State*, 170 Ariz. 6, 821 P.2d 273, 279–80 (1991).

Application of collateral estoppel, however, does not require a final *appealable* judgment. *See Elia v. Pifer*, 194 Ariz. 74, 977 P.2d 796, 802 (1998) ("Elia argues that the requirement of a 'final judgment' means that there must be an appealable judgment. We disagree."). Instead, the term "final judgment" includes " 'any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect.' " *Id.* at 803 (quoting Restatement (Second) of Judgments § 13 (1982)). The judgment must be " 'a firm and stable one, the last word of the rendering court—a final judgment' as opposed to one that is considered 'merely tentative in the very action in which it was rendered.' " *Id.* (quoting Restatement (Second) of Judgments § 13 cmt. a).

The state court entered an unsigned minute entry granting DSE's motion for summary judgment. Therefore, the minute entry was not appealable. However, granting a motion for summary judgment is clearly an adjudication of the issues in the case—there is no indication that the state court plans to revisit the decision. The state court's reference to the minute entry in its later findings of fact and conclusions of law and final judgment bolsters this conclusion.

It does not appear that any Arizona courts have addressed the issue of whether invocation of the privilege against self-incrimination in a prior proceeding vitiates a collateral estoppel claimant's argument that the issue was actually litigated. Nearly all bankruptcy courts that have considered the issue conclude that "even when a party invokes his Fifth Amendment privilege in the prior suit, the 'actually litigated' requirement for purposes of collateral estoppel may nevertheless be satisfied." *Federal Trade Comm. v. Abeyta (In re Abeyta)*, 387 B.R. 846, 853 (Bankr.D.N.M.2008); *see also Birdsall v. Tulloch (In re Tulloch)*, 373 B.R. 370, 387 (Bankr.D.N.J.2007) (applying Massachusetts law); *In re Rutledge*, 245 B.R. 678, 683 (Bankr.D.Kan.1999); *In re Quinn*, 170 B.R. 1013 (Bankr.E.D.Mo.1994). The only case that holds directly to the contrary appears to be *Nat'l Acceptance Co. of Amer. v. Bathalter (In re Bathalter)*, 91 B.R. 820, 824 (Bankr.S.D.Ohio 1988). In *Bathalter*, the state court entered summary judgment after the defendant failed to oppose the summary judgment motion of the plaintiff and invoked the self-incrimination privilege. *See id.* at 821. The court concluded that "the issue of whether the character of the Defendant's conduct would render the debt owing NAC nondischargeable was neither actually litigated in the District Court proceeding nor necessary to the District Court's decision." *Id.* at 824. In another case, a bankruptcy court concluded that a default judgment entered against a debtor invoking the self-incrimination privilege could not support the use of collateral estoppel. *See Fed. Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226, 235–36 (Bankr.E.D.Va.2000).

Bernadette Moreno actively opposed the summary judgment motion despite invoking the self-incrimination privilege. The case is therefore distinguishable from *Bathalter*, where the debtor failed to oppose the summary judgment motion at all, and *Gilson*, where a default judgment was entered. In a civil case, the court is permitted to draw adverse inferences from

a defendant's invocation of the privilege against self-incrimination. *National Acceptance Co. of America v. Bathalter (In re Bathalter)*, 705 F.2d 924, 930 (7th Cir. 1983) (stating that "the drawing of an adverse inference from privileged silence in a civil case does not make the exercise of the privilege sufficiently 'costly' to amount to compulsion when there is other evidence of the fact"). Therefore, Moreno's failure to testify is merely one piece of evidence accepted by the state court that contributed to its finding of liability. Moreno had a full opportunity to litigate the matter and she actually did litigate it.

█ The Bankruptcy Code renders nondischargeable a debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) ... a false representation ... other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2) (2009). In order to prevail on a § 523(a)(2)(A) claim in the Seventh Circuit, the creditor "must establish that: (1) the debtor obtained the money through a representation that was false or was made with such reckless regard for the truth as to constitute willful misrepresentation; (2) the debtor had an actual intent to defraud; and (3) the creditor actually and reasonably relied on the false representation." *Heptacore, Inc. v. Luster (In re Luster)*, 50 Fed.Appx. 781, 784 (7th Cir.2002). The U.S. Supreme Court has clarified that § 523(a)(2)(A) requires only a showing of "justifiable" reliance. *See Field v. Mans*, 516 U.S. 59, 73–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

█ In addition, a debt for "embezzlement, or larceny" is also nondischargeable. *Id.* § 523(a)(4). Embezzlement is defined as " 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' " *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422, (1895)). Stated differently, embezzlement is proven by demonstrating that "(1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *Id.*[4] Larceny is proven "for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir.1991).

█ Finally, a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. *Id.* § 523(a)(6). In general, this exception to discharge is limited to debts resulting from "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Seventh Circuit has noted that "[f]raud, of course, is an intentional tort and § 523(a)(6) makes many intentional torts nondischargeable." *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir.2004).

█ in Arizona, the elements of actual fraud are:

(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7)

---

4. The *Weber* opinion states that the creditor must demonstrate the elements of embezzlement "by clear and convincing evidence," 892 F.2d at 538, but the United States Supreme Court subsequently held that all § 523(a) claims need only be proven by preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

492

his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514, 517–18 (1966). Arizona classifies fraud as an intentional tort. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 578 n. 8 (1986) (noting that "punitive damages are not recoverable in every fraud case, even though fraud is an intentional tort.").

 The state court necessarily found, by virtue of its minute entry granting summary judgment as to the fraud count, that Bernadette Moreno made a representation that was false and material, that she knew the representation was false (or that she was ignorant of its truth), that she intended that the representation be acted upon by DSE, that DSE did not know the representation was false, that DSE relied on the truth of the representation, that DSE had the right to rely on the truth of the representation, and that the representation caused DSE injury. These conclusions of law are implicit in the minute entry granting DSE's motion.

To find the debt nondischargeable pursuant to § 523(a)(2), this Court must find that Bernadette Moreno obtained money from DSE through a representation that was false or made with reckless disregard for the truth as to constitute willful misrepresentation. It must also find that Moreno had an actual intent to defraud DSE, and that DSE actually and reasonably relied upon the representation. The only element that appears to be questionable is whether a distinction exists between an actual intent to defraud and an intent that a materially false representation be acted upon. This appears to be a distinction without a difference. Consequently, because the state court has implicitly reached the issues essential to its judgment, that judgment supports a finding of facts necessary for nondischargeability pursuant to § 523(a)(2).

Moreno maintains that it is unclear what the state court found in its minute entry because a judgment for unjust enrichment, which sounds in equity, is necessarily inconsistent with a judgment for fraud, which sounds in law. If the state court granted the unjust enrichment claim, she argues, it must necessarily have concluded that DSE had no adequate remedy at law, including no fraud claim, and therefore, it must have failed to find intent necessary to satisfy § 523(a)(2). While this argument holds some surface appeal, it crumbles upon closer inspection.

 To establish a claim for unjust enrichment in Arizona, a plaintiff must show: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 48 P.3d 485, 491 (2002). Granting judgment on both counts may well be inconsistent, but there is no dispute that the state court granted summary judgment on the fraud claim. And the fraud claim requires a finding of intent; a finding of unjust enrichment does not. Therefore, even if the state court's minute entry is internally inconsistent, it is clear that it made the requisite finding as to intent by granting summary judgment on the fraud claim.

 As to § 523(a)(4), the elements also appear to be met, at least as to larceny. To qualify for the larceny exception to discharge, this Court must find that Moreno wrongfully and with fraudulent intent took money from DSE. The state court noted in its subsequent findings of fact and conclusions of law that it granted summary judgment "based on Bernadette Bruce-

Moreno's theft of at least $299,948.44 from DSE through fraudulent transactions." Arizona law states that:

A. A person commits theft if, without lawful authority, the person knowingly:

1. Controls property of another with the intent to deprive the other person of such property; or

2. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or

3. Obtains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services; or

4. Comes into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and appropriates such property to the person's own or another's use without reasonable efforts to notify the true owner; or

5. Controls property of another knowing or having reason to know that the property was stolen; or

6. Obtains services known to the defendant to be available only for compensation without paying or an agreement to pay the compensation or diverts another's services to the person's own or another's benefit without authority to do so.

Ariz.Rev.Stat. § 13–1802 (2009). Clearly, use of the term "theft" indicates that Moreno wrongfully took money from DSE. The state court also used the word "fraudulent" to describe the transactions, indicating that Moreno acted with fraudulent intent. Embezzlement requires a finding that Moreno fraudulently appropriated money that had been entrusted to her. It is not clear that the state court ever made a specific finding that the funds were entrusted to Moreno, as this was not a necessary element of the fraud count. Although the state court may have concluded, using the second definition of theft contained in the Arizona statutes, that property was entrusted to Moreno, it did not specify that it intended to draw this specific conclusion. Therefore, I cannot appropriately apply collateral estoppel as to embezzlement.

 Finally, the state court found that Moreno committed fraud, an intentional tort, against DSE. The only close question is whether a finding that Moreno intended DSE to rely on her representation is equivalent to intent to injure DSE. In this context, however, the two elements appear to be indistinguishable. If Moreno intended DSE to rely on her false representation, she necessarily intended to injure them, as she represented that she had not taken money from DSE when she actually had. By definition, such an act would injure DSE.

All of the elements of collateral estoppel appear to have been met in this case. Accordingly, I grant DSE's motion for summary judgment.

## ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that

1. The motion of the Plaintiff for summary judgment is GRANTED; and

2. The debt owed to Digital Systems Engineering, Inc. shall be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).