IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

LAWRENCE T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.T., *Appellees.*

No. 1 CA-JV 18-0214
FILED 2-28-2019

---

Appeal from the Superior Court in Navajo County
No.  S0900JD201500034
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

---

COUNSEL

John A. Banker Attorney at Law, Taylor
By John A. Banker
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee, Department of Child Safety*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge James P. Beene and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1        Lawrence T. ("Father") appeals the juvenile court's order terminating his parental rights to M.T., his daughter, on the grounds of abuse of a child and fifteen months' out-of-home placement. The issue before us is whether the court erred in denying Father's motion that urged dismissal of the termination proceeding based on the doctrine of res judicata, which we refer to as claim preclusion. Because Father did not meet his burden of establishing the elements of claim preclusion, the court did not err when it denied his motion.

**BACKGROUND**

¶2        Father and Hannah B. ("Mother"), who were never married, are the biological parents of M.T., born in 2013. In 2015, the Arizona Department of Child Safety ("DCS") received a report that Mother's home was unsafe for M.T. Mother agreed to allow M.T. to stay in Father's care until further notice. When Father was indicted on charges arising from his alleged sexual misconduct with several victims (each under the age of 15) between 2005 and 2007, DCS placed M.T. with a family member. DCS then filed a dependency petition alleging Father was neglecting M.T. due to his incarceration, which the juvenile court granted.

¶3        In January 2017, DCS moved to terminate Mother's and Father's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533. Regarding Father, DCS alleged M.T. had been in an out-of-home placement for more than fifteen months, Father had not remedied the circumstance causing the out-of-home placement, and due to the severity of his pending criminal charges, it was unlikely he could properly parent in the near future. A.R.S. § 8-533(B)(8)(c). Following a termination hearing in May 2017, the juvenile court terminated Mother's parental rights but found

DCS did not meet its burden of proof as to Father.[1]  The court explained that (1) Father appeared to have a strong relationship with M.T at the time he was incarcerated; (2) he had access to limited services and visits while incarcerated; and (3) it did not appear Father's criminal charges would be resolved until trial, which was scheduled to occur in October 2017.  Although the court denied DCS's motion, it did not dismiss the underlying dependency; instead, the court set a permanency planning hearing for Father in December 2017, seemingly anticipating a conclusion in Father's criminal trial.

¶4            At Father's request, however, the October trial date was later vacated and rescheduled for February 2018.  Shortly thereafter, DCS filed a petition to terminate Father's parental rights, alleging fifteen months' out-of-home placement and abuse of a child under § 8-533(B)(2).  Father moved to dismiss, arguing both grounds were barred by claim preclusion, which the juvenile court denied.  At the subsequent termination hearing, the court heard expert testimony on the abuse allegations as well as testimony from DCS caseworkers regarding Father's ability to resume parenting if found not guilty of his pending criminal charges.  During closing arguments, Father again argued claim preclusion applied to both grounds.

¶5            After the hearing, but before the juvenile court issued its ruling, Father's criminal charges were dismissed without prejudice based on the unavailability of a witness.  Father requested a new trial to re-open the defense portion of the termination hearing, asserting in part (1) the fifteen-month ground "must be dismissed" because he would be able to "resume effective parenting" in the near future and (2) the dismissal cast doubt on whether sufficient evidence proved he "willfully abused or failed to protect a child."  The court denied Father's motion but allowed Father to supplement the record with evidence of the dismissal and gave all parties the opportunity to submit supplemental closing arguments.  The court's subsequent ruling found that DCS had proven, by clear and convincing evidence, both statutory grounds for termination and, by a preponderance of the evidence, that termination was in M.T.'s best interests.

¶6            Addressing the abuse ground, the juvenile court concluded the "[e]vidence presented establishes that over a period of time . . . Father engaged in acts of sexual conduct and sexual assault with a minor."  Supporting this conclusion was one victim's forensic interview, which the

---

[1]    We affirmed the juvenile court's order terminating Mother's parental rights in *Hannah B. v. Department of Child Safety*, 1 CA-JV 17-0437, 2018 WL 1477512, at *1, ¶ 1 (Ariz. App. Mar. 27, 2018) (mem. decision).

court found especially credible "after considering . . . the [expert] testimony regarding the medical evidence of [this victim's] scarring and trauma."  As for the fifteen-month ground, the court found that at the time of the second hearing (1) M.T. had been in an out-of-home placement for more than 30 months; (2) Father was incapable of providing for M.T. due to incarceration; and (3) despite Father's charges being dismissed, Father would not be capable of exercising proper and effective parental control in the near future because he would need "to obtain a psychosexual evaluation and possible treatment."  Father timely appealed.

## DISCUSSION

¶7          Father argues the juvenile court erred by denying his motion to dismiss because DCS's second request for termination was "barred by operation of the doctrine of [claim preclusion]."[2]   We review the applicability of this doctrine de novo.  *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5 (1999).

¶8          Claim preclusion, as traditionally applied in civil litigation, means that "a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim." *Dressler v. Morrison*, 212 Ariz. 279, 282, ¶ 15 (2006).  Specifically, a party seeking to invoke the doctrine must establish "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69–70, ¶ 14 (2006).  As a judicially-created doctrine, however, it is not strictly applied in all instances. *In re Marriage of Gibbs*, 227 Ariz. 403, 407, ¶ 8 (App. 2011); *see also Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345 (App. 2013); *In re Juvenile Appeal (83-DE)*, 460 A.2d 1277, 1282 (Conn. 1983) ("The doctrines of preclusion . . . should be flexible and must give way when their mechanical

---

2          In his reply brief, Father summarily asserts there was no "constitutionally required showing of a nexus" between the abuse of a child and Father's relationship with M.T.  Father waived this argument by failing to raise it in his opening brief on appeal. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007) (recognizing that we generally do "not consider arguments made for the first time in a reply brief").  Moreover, Father concedes in his opening brief that "whether the evidence in the second [hearing] supports the second ruling" is irrelevant to his claim preclusion argument.

application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies.").

¶9 In *Bennigno R.*, we rejected the father's argument that DCS was barred from re-litigating his parental rights because an earlier termination proceeding resulted in a finding that termination was not in his children's best interests.  233 Ariz. at 348, ¶ 10.  We explained that claim preclusion has "limited application" within dependency and termination proceedings, agreeing with other courts that have "cautiously" applied the doctrine because the "imposition of artificial constraints that serve merely to advance the cause of judicial economy" must not prevent an outcome that is in the child's best interests.  *Id.* at 349, ¶ 16 (first quoting *People ex rel. L.S.*, 721 N.W.2d 83, 90, ¶ 24 (S.D. 2006); and then quoting *State ex rel. J.J.T.*, 877 P.2d 161, 163–64 (Utah Ct. App. 1994)).  Recognizing these principles, we address Father's assertion that claim preclusion barred the court's consideration of the two statutory grounds for termination alleged by DCS.

### A.    Final Judgment on the Merits

¶10 Father correctly notes that the juvenile court issued a decision concerning his parental rights based on evidence offered at the first termination hearing, but he does not cite any authority supporting the proposition that denial of a motion to terminate during an ongoing dependency constitutes a final judgment on the merits warranting preclusion.  Because our research has not revealed any Arizona authority explaining the meaning of "final judgment on the merits" in this kind of proceeding, we "look to the Restatement and other jurisdictions for guidance." *Data Sales Co. v. Diamond Z Mfg.*, 205 Ariz. 594, 598, ¶ 16 (App. 2003); *see also Webster v. Culbertson*, 158 Ariz. 159, 162 (1988) (explaining that Arizona courts may follow the Restatement when the result produces a "sound and fair policy").

¶11 A final judgment on the merits for the purpose of claim preclusion is one that is not "tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court."  Restatement (Second) of Judgments § 13 cmt. b (1982); *see In re J'America B.*, 806 N.E.2d 292, 301 (Ill. Ct. App. 2004) (concluding that an order is not final for claim preclusive purposes if "[t]he possibility still exists that the rights of a parent could be terminated in the future"); *cf. In re L.B.*, 889 N.E.2d 326, 333–34 (Ind. Ct. App. 2008) (explaining that a dismissal due to procedural error was not preclusive because none of the statutory

grounds for termination "were finally determined"), *abrogated on other grounds by In re G.P.*, 4 N.E.3d 1158 (Ind. 2014).

¶12        Here, the juvenile court's order was not a final judgment on the merits as to Father because it did not reach a definitive resolution of his parental rights. Although the court found DCS had not proven the fifteen-month ground against Father at that time, the court without objection set a date for "further permanency planning." In doing so, the court implicitly determined M.T. remained dependent and additional proceedings were necessary for ongoing review of the case plan, including her "permanent future legal status," with paramount concern given to her health and safety. *See* A.R.S. §§ 8-845(B) (listing criteria for reviewing dependent status), -862(A), (D)(1)-(2) (outlining the court's duty to commence termination proceedings following a permanency hearing if "termination is clearly in the best interests of the child"); *see also J'America B.*, 806 N.E.2d at 301; *In re A.S.*, 752 P.2d 705, 711 (Kan. Ct. App. 1988) (finding claim preclusion did not apply because although the evidence for unfitness was not clear and convincing at the time of the hearing, "[t]he case and the issue of unfitness remained open for future review").

## B.        Change of Circumstances

¶13        Father argues that *Bennigno R.* found claim preclusion inapplicable "due to changes in the dependent children's circumstances, such as new psychological evaluations," and contends there must have been a change in M.T.'s circumstances between the first and second termination hearings to avoid preclusion.

¶14        We do not construe *Bennigno R.*'s discussion of changed circumstances so narrowly. Recognizing "[t]he children's need for permanency [had] persisted and even intensified," *Bennigno R.* looked to the passage of time and the father's continued inability to parent. 233 Ariz. at 349, ¶ 17. Thus, the relevant question is not limited to whether a material change in the *child's* circumstances has occurred between termination proceedings, but whether, generally, there is evidence of changed circumstances that could affect the juvenile court's determination regarding the statutory grounds alleged and/or the child's best interests. *See id.* We recognize this approach may set a high bar for establishing claim preclusion; however, because the evidence in these proceedings is rarely static, this approach ensures the juvenile court will be able to effectively determine the existence of statutory grounds and the best interests of the child at the time of the termination hearing. *See People ex rel. J.R.*, 711 P.2d 701, 703 (Colo. Ct. App. 1985) ("Although the policy of limiting litigation is

sound, that policy should not be applied so as to deprive the state in its role as *parens patriae* from seeking a resolution which will serve the interests of the children."); *cf. Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016) (explaining that the juvenile court must decide "whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing").

¶15            The Oregon Court of Appeals confronted a similar issue when a father argued termination of his parental rights following a second termination proceeding was improper because the facts relied upon "were or could have been considered in the first proceeding." *In re Newman*, 619 P.2d 901, 904 (Or. Ct. App. 1980). Rejecting the father's argument, the court explained:

> Termination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances, in which the child is within the juvenile court's jurisdiction and, often, is subject to agency custody or supervision. An order denying a petition to terminate parental rights seldom leads directly to the termination of wardship or of agency involvement. It is one thing to say that such an order bars a second termination proceeding when there has been *no change* in the operative facts which led to the initiation of the first proceeding; it is very different—and clearly wrong—to contend that, if new substantial material facts come into existence which justify the filing of a new termination proceeding, evidence and facts which were or could have been considered in the earlier proceeding cannot be considered or reconsidered in the later one.

*Id.* at 904–05 (emphasis added); *see also Juvenile Appeal (83-DE)*, 460 A.2d at 1282 (explaining that claim preclusion affords little protection against subsequent hearings because the court looks at the conditions at the time of termination and "[a]n adjudication that a ground for termination did not exist at one time does not mean such ground has not arisen at a later time").

¶16            Here, Father's criminal trial was scheduled for October 2017, but it was continued until February 2018 and expected to last approximately one month. Given that the ground for termination in the first hearing was fifteen months' out-of-home placement, the fact that M.T. would continue to be in an out-of-home placement for at least another five months (at the time the second request was filed) was a changed circumstance that could affect the juvenile court's determination in the case.

*See* § 8-533(B)(8)(c) (listing the requirements for the fifteen-month ground, including a parent's failure to remedy the circumstances causing the out-of-home placement and the likelihood of being able to properly parent in the near future).

### C.  Identity of Claims: Same Evidence Test

**¶17**      Father also contends DCS is precluded from raising the abuse of a child ground because "DCS had a full and fair opportunity to litigate the child abuse issue the first time and failed to do so."  He asserts that a final judgment on the merits binds parties when "the matter now in issue . . . was, or might have been, determined in the former action."  *Lalli*, 194 Ariz. at 57, ¶ 7.  Citing this court's decision in *Phoenix Newspapers, Inc. v. Department of Corrections*, 188 Ariz. 237 (App. 1997), Father argues the proper legal standard for deciding whether an "identity of claims" exists between the two proceedings is the "transactional approach."  In that case, however, we merely recognized that most federal circuit courts follow the transactional test, which precludes a second action if it "could and should have been asserted in the first action" because it "arises out of the same events."  188 Ariz. at 241.  We then made clear that Arizona courts apply the "same evidence" test, precluding a second action when "no additional evidence is needed to prevail in the second action than that needed in the first."  *Id.* at 240 (citing *Rousselle v. Jewett*, 101 Ariz. 510 (1966)).  Although we expressed dissatisfaction with the same evidence test and favorably discussed the transactional approach, we were "compelled to hold that the judgment in the first action does not bar the claim asserted in this action" even though the separate actions arose out of the same event.  *Id.* at 242.

**¶18**      Recently our supreme court referenced the transactional definition when contrasting claim preclusion with issue preclusion.  *Crosby-Garbotz v. Fell*, CR-18-0050-PR, 2019 WL 438194, at *4, ¶ 19 (Ariz. Feb. 5, 2019).  Although this reference might suggest our supreme court is inclined to adopt the transactional approach, until that change is explicitly announced we must apply the same evidence test.  *See Phoenix Newspapers*, 188 Ariz. at 242. *Compare Pettit v. Pettit*, 218 Ariz. 529,  532–33, ¶¶ 8–9 (App. 2008) (applying the same evidence test to a paternity action controlled by state law), *and Power Road-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014) (recognizing the same evidence test as Arizona's standard for claim preclusion), *with Gila River*, 212 Ariz. at 69, ¶ 13 (discussing federal interpretations of "same claim" because "[f]ederal law dictates the preclusive effect of a federal judgment"), *and Phillips v. O'Neil*, 243 Ariz. 299, 304, ¶¶ 22–24 (2017) (applying the "same claim" definition used by "most federal courts" to harmonize the meaning of Arizona Rule

of Evidence 408 with its federal counterpart). However, a shift to the transactional approach would make no difference here, as Father cannot establish all the elements of claim preclusion. *See Gila River*, 212 Ariz. at 69–70, ¶ 14.

**¶19** Moreover, the practical effect of Father's argument would require a person or agency seeking termination of a parental relationship to allege, and prosecute to conclusion, all possible grounds for which termination might be sought. The pertinent statute does not impose that requirement. Section 8-533 provides that "any person or agency that has a legitimate interest in the welfare of a child . . . may file a petition . . . alleging grounds contained in subsection B," § 8-533(A), and "[e]vidence sufficient to justify the termination of the parent-child relationship shall include *any one* of the following [grounds]," § 8-533(B) (emphasis added). The statute's language unambiguously provides that a request to terminate parental rights need only allege evidence supporting at least *one* of the statutory grounds, and we will not expand that requirement. *See Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 405, ¶ 13 (App. 2008) (noting that we will not "enlarge, stretch, expand, or extend" statutes, nor will we "read meaning into a statute that is not within the legislature's 'manifest intention . . . as gathered from the statute itself'" (citation omitted)).

**¶20** Finally, this conclusion is consistent with other jurisdictions that have addressed the issue of whether all possible grounds must be alleged in an initial request for termination of parental rights. *See In re Noah B.*, 891 N.W.2d 109, 124–25 (Neb. 2017) (allowing a second petition for termination to proceed when the state alleged a different ground even though the facts for the ground existed at the time of the initial petition); *In re S.L.*, 76 P.3d 77, 81, ¶ 10 (Okla. Civ. App. 2003) (affirming termination after a second proceeding "although incarceration and duration of foster care could have served as grounds for termination in the first proceeding"); *State ex rel. A.C.M.*, 221 P.3d 185, 191, ¶ 18 (Utah 2009) (adopting the rule that courts may consider new facts, regardless of whether they could have been discovered at the time of the previous proceedings, and facts that were "determined in previous termination proceedings when considering a later termination petition").

**¶21** In sum, DCS was not barred from raising the ground of abuse of a child in its second request for termination because the evidence necessary to support this ground would not sustain the fifteen months' out-of-home placement ground raised in the first hearing, and DCS is not required to allege, and prosecute to conclusion, all possible grounds for termination in its initial request.

**CONCLUSION**

¶22        Because the juvenile court's ruling following the first termination hearing did not conclusively determine Father's parental rights, and the second termination hearing involved changed circumstances and a new ground requiring evidence not presented as part of the first hearing, we affirm the court's order.



AMY M. WOOD • Clerk of the Court
FILED:  AA