NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VESPER PROPERTIES, L.L.C., an Arizona limited liability company,
*Plaintiff/Counterdefendant/Appellee-Cross Appellant*,

*v.*

LINDFORS LONGHORN RANCH, L.L.C., an Arizona limited liability
company, *Defendant/Counterclaimant/Appellant-Cross Appellee*.

No. 1 CA-CV 20-0315
FILED 4-22-2021

Appeal from the Superior Court in Yavapai County
No.  P1300CV201700041
The Honorable Krista M. Carman, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Law Offices of Stewart F. Gross, Phoenix
By Stewart Gross
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Tiffany & Bosco PA, Phoenix
By Kevin P. Nelson, Evan P. Schube, Amy D. Sells
*Counsel for Defendant/Appellant/Cross-Appellee*

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the Court, in
which Judge Maria Elena Cruz and Judge Brian Y. Furuya joined.

**H O W E**, Judge:

¶1        Lindfors Longhorn Ranch, L.L.C. appeals the trial court's
order distributing proceeds from the sale of the Longhorn Ranch property,
as well as the trial court's granting Vesper Properties, L.L.C., summary
judgment on its abuse of process claim. Vesper cross-appeals the trial
court's finding that it filed a groundless lis pendens and the court's
awarding Lindfors its reasonable attorneys' fees. For the following reasons,
we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2006, Sherri Lindfors[1] and her adult children (collectively
"the Sherri Plaintiffs") initiated an action ("the Family Litigation") against
Diane Lindfors, Lindfors Longhorn Ranch, and another family member
(collectively "the Lindfors Defendants") to establish, among other things,
title and management of two properties—the Longhorn Ranch property
and the Chino Valley property. After four years of litigation, the parties
reached a settlement, and the trial court entered its ruling in 2011 ("2011
Ruling") outlining the parties settlement agreement. Pursuant to the 2011
Ruling, both properties were ordered sold and the monies from the sales
distributed as follows: (1) $8,106.40 to the Sherri Plaintiffs, (2) $132,077.17
to the Lindfors Defendants, and (3) any remaining balance divided equally
between them. The court ordered that both properties be placed for sale
with a realtor of the parties' choosing within 30 days of the ruling and both
parties agreed that "there will be no right of appeal."

¶3        The two properties were listed for sale, but no offers were
made. Two months later, a notice of trustee sale was recorded for the Chino
Valley property and the property was foreclosed on in April 2012. In
October 2014, Roy Mintzmyer offered to buy the Longhorn Ranch property
for $350,000, with a $50,000 down payment and the balance paid over a

---

[1]        Because both parties share the same last name, we refer to each of
them, respectfully, by their first names.

30-year period. Diane declined the offer because it required her to finance the purchase on a 30-year loan.

¶4            In October 2016, Vesper investigated ownership of the Longhorn Ranch property and prepared a report that identified Lindfors and Diane as the owners of the property and discussed the Family Litigation. The report also noted a "[p]ending CP Tax Foreclosure in the amount of $42,738.68." The following month, Vesper offered to purchase the Sherri Plaintiffs' interest in the property for $6,000. Vesper also emailed Diane offering to purchase her interest in the property for $10,000. Vesper stated that it preferred to purchase Diane's interest because she "currently holds title to the property." Vesper later purchased the Sherri Plaintiffs' interest in the Longhorn Ranch property for $7,500, and the Sherri Plaintiffs executed two quitclaim deeds transferring their interest in the property to Vesper. Vesper then paid $40,314.19 in outstanding taxes to redeem the property. Diane never sold her interest in the property to Vesper.

¶5            In January 2017, Vesper recorded a lis pendens and filed a complaint asserting that it had acquired sole ownership of the Longhorn Ranch property through the quitclaim deeds the Sherri Plaintiffs had executed. Lindfors counterclaimed for partition of the property. In August 2018, Lindfors moved to file a second-amended counterclaim to include claims of abuse of process, punitive damages, and the filing of a groundless lis pendens.

¶6            In October 2018, Lindfors moved for summary judgment on the partition claim and on Vesper's sole ownership claim. The trial court granted Lindfors summary judgment, finding that Vesper's sole ownership claim had no basis in law and was unsupported by evidence. Additionally, the court granted Lindfors summary judgment on its partition claim and appointed a special commissioner for the sale of the property. Finally, the trial court also granted Lindfors' motion to file a second-amended counterclaim. The property was later sold to Mintzmyer, who had made the original offer in October 2014.

¶7            In February 2019, Lindfors filed its second-amended counterclaim, alleging that Vesper recorded a groundless lis pendens and had engaged in abuse of process. The parties then each moved for summary judgment on those claims. The trial court granted Vesper summary judgment, dismissing Lindfors' abuse of process claim and its request for punitive damages. The Court found that even though Vesper's sole ownership claim was meritless, Vesper provided evidence that at the time of filing, it believed that it had a "proper basis for filing the quiet title action

and lis pendens." The court denied both parties' summary judgment motions on Lindfors' groundless lis pendens claim and on the distribution of proceeds related to the partition claim, finding that issues of fact remained about whether Vesper's lis pendens was groundless and on the division of proceeds.

¶8        The court held a trial to determine how the proceeds from the partition should be distributed and whether Vesper's lis pendens was groundless. Vesper's owner testified that Diane never transferred her interest in the property to Vesper. Diane testified that she did not know how much of the $132,077.17 credit given in the 2011 Ruling was attributable to the Chino Valley property and that she could not remember how much was attributable to the Longhorn Ranch property. After trial, the court found that it could not follow the distributions listed in the 2011 Ruling because the sale of the Chino Valley property made it impossible to determine what credits were associated with the Longhorn Ranch property. It also found that Diane breached the 2011 Ruling by declining Mintzmyer's October 2014 offer to buy the property. The court distributed the proceeds by awarding Vesper $20,171.59 and $4,574.52 for one-half the taxes and attorneys' fees it spent to redeem the property and then ordered that any remaining proceeds be divided equally.

¶9        The court further found that Vesper knew or had reason to know that its sole ownership claim was groundless. It reasoned that Vesper's own report noted that Lindfors and Diane held an ownership interest in the property and that Vesper's counsel testified that she had reviewed the 2011 Ruling.

¶10        The trial court therefore awarded Lindfors $5,000 in statutory damages, $83,855.00 in attorneys' fees, and $2,459.44 in costs pursuant to A.R.S. § 33–420(A). Lindfors timely appealed and Vesper timely cross-appealed.

## DISCUSSION

### 1. Distribution of Proceeds

¶11        Lindfors argues that the trial court erred by not distributing the proceeds from the sale of the property according to the 2011 Ruling. It contends that claim preclusion applied and prevented Vesper from relitigating the partition distribution. We review the claim preclusive effect of a prior judgment de novo. *Howell v. Hodap*, 221 Ariz. 543, 546 ¶ 17 (App. 2009).

¶12            Under claim preclusion, a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Stearns v. Ariz. Dep't of Revenue*, 231 Ariz. 172, 177 ¶ 25 (App. 2012). A judgment is final for purposes of claim preclusion if the judgment is not "tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." *Lawrence T. v. Dep't of Child Safety*, 246 Ariz. 260, 263 ¶ 11 (App. 2020) (quoting Restatement (Second) of Judgments § 13 cmt. b.).

¶13            The Family Litigation involved a quiet title action that resulted in the parties agreeing to the partition of the property and the distribution of the sale proceeds. Vesper does not challenge these elements of claim preclusion. While Vesper was not a party to the Family Litigation that resulted in the 2011 Ruling, claim preclusion applies "to those who acquire an interest in the subject matter affected by the earlier judgment through or under one of the parties after judgment is entered." *Hall v. Lalli*, 191 Ariz. 104, 106 (App. 1997). Because Vesper acquired the Sherri Plaintiffs' interest in the property, the parties are the same for purposes of claim preclusion.

¶14            Relying on *Haywood Securities, Inc. v. Ehrlich*, Vesper argues that the 2011 Ruling is not a final judgment because the ruling was unsigned. 214 Ariz. 114 (2007). But the supreme court found there only that an electronic signature satisfies the requirement that a judgment must be signed before it is considered final for purposes of appeal. *Id.* at 118 ¶ 21. It did not hold that a judgment is not final for purposes of claim or issue preclusion unless the judgment is signed. A final judgment does not have to be appealable to be given preclusive effect. *Elia v. Pifer*, 194 Ariz. 74, 80 ¶ 32 (App. 1998). By the same token, a judgment that is final for purposes of claim preclusion may not be final for appeal. *See* Restatement (Second) of Judgments § 13 cmt. b.; *see also In re Moreno*, 414 B.R. 485, 490 (W.D. Wis. 2009) (finding that an unsigned minute entry was a final judgment for purposes of issue preclusion even if the judgment was not appealable because the judgment was unsigned).

¶15            The fact that the trial court's 2011 Ruling was unsigned does not make it any less final for purposes of determining whether any of the parties were free to later relitigate the claims decided therein. On the contrary, the circumstances surrounding the court's 2011 Ruling show that the order was not "tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." *See Lawrence T.*, 246 Ariz. at 263 ¶ 11. The parties agreed to be bound by the settlement agreement and stipulated that "there will be no right of appeal."

Therefore, the 2011 Ruling was a final judgment on the merits and claim preclusion applies.

¶16 Citing to Arizona's partition statute, Vesper argues that Arizona law requires "the court to weigh all evidence with regard to interests in property, and not rely solely upon one of the parties' theories." The partition of property, however, must comply with Arizona's statutory scheme only in the absence of an agreement between the parties. *Cohen v. Frey*, 215 Ariz. 62, 65 ¶ 6 (App. 2007). "If the parties agree to voluntary partition, however, they may include whatever terms they desire." *Id.* In the 2011 Ruling, the Lindfors Defendants and the Sherri Plaintiffs voluntarily agreed to the partition and agreed on how the proceeds of the sale would be distributed. As the successor in interest—with full knowledge of the 2011 Ruling—Vesper cannot now invoke the partition statutes to negate the 2011 Ruling. *See id.* at ¶ 7.

¶17 Vesper argues next that Lindfors violated the 2011 Ruling by failing to list the properties for sale within 30 days of the court's ruling. Diane testified that the two properties were listed for sale within the time limits prescribed by the 2011 Ruling, she sent signed listing agreements to the parties' realtor shortly after the Ruling was entered, and the trial court did not find that Lindfors had violated the 2011 Ruling in this regard. Therefore, Lindfors did not violate the 2011 Ruling.

¶18 Vesper also argues that Lindfors violated the 2011 Ruling by declining Mintzmyer's October 2014 offer to purchase the property. Lindfors counters that the Ruling did not require it to finance the sale of the property over a 30-year period. To interpret a ruling, we apply the general rules of construction and must determine whether the ruling is ambiguous. *Id.* at 66 ¶ 11.

¶19 Lindfors was not required to accept Mintzmyer's 2014 offer because his offer was unreasonable and inconsistent with the trial court's 2011 Ruling. The 2011 Ruling did not require Lindfors to accept any offer made on the property, nor did it require her to finance the sale of the property. Moreover, Mintzmyer's request for Lindfors to finance the sale over a 30-year period is inconsistent with the 2011 Ruling because the proceeds of the sale had to be divided and a mortgage cannot be divided.

¶20 Additionally, when considering the surrounding circumstances, the 2011 Ruling cannot be interpreted to require Lindfors to finance the sale of the property. After several years of litigation involving claims of slander, breach of contract, and breach of fiduciary duty, the

parties agreed to sever business ties by selling the properties. Requiring the parties to finance the sale of the properties would require them to remain in business together for 30 years until the final mortgage payment is made. Vesper's own report indicates that after speaking with Diane and Sherri, "they do not wish to talk to each other." Vesper's argument fails and Lindfors did not violate the 2011 Ruling.

¶21 Vesper argues that a change in circumstances required a redetermination of the distribution of the proceeds. Vesper does not support this argument with any legal citations and does not argue that any specific exception to claim preclusion applies here. And we note that the Sherri Plaintiffs never moved to set aside the 2011 Ruling under Arizona Rule of Civil Procedure 60 and never sought to modify the Ruling based on changed circumstances. Vesper likewise never sought relief under Rule 60.

¶22 Nevertheless, a prior judgment may be modified or set aside if "[t]here has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust." Restatement (Second) of Judgments § 73(2). Relief based on a change in circumstances, however, will be denied if, after the discovery of the change, the party "was unreasonably dilatory in seeking relief." Restatement (Second) of Judgments § 74(1). Factors relevant to this determination include undue delay, possible prejudice, and "protection of interests of innocent third persons." Restatement (Second) of Judgments § 74 cmt. c.

¶23 Assuming without deciding that a substantial change in circumstances warranted relief from the 2011 Ruling, Vesper was unreasonably dilatory in seeking relief because it attempted to vacate or modify the 2011 Ruling after a five-year delay. *See Ortega v. First RepublicBank Fort Worth, N.A.*, 792 S.W.2d 452, 455 (Tex. 1990) (finding that Restatement (Second) of Judgments § 74 precluded relief after a four-year delay). When the delay is long, as is the case here, prejudice may be presumed. *Gersten v. United States*, 364 F.2d 850, 852 (Ct. Cl. 1966). Even if we do not presume prejudice, under Vesper's interpretation of the 2011 Ruling, Lindfors would be prejudiced by vacating or modifying the Ruling because, as Diane testified at trial, she could no longer remember the credits that were attributable to which property. *See Robinson v. E.P. Dutton & Co.*, 45 F.R.D. 360 (S.D.N.Y. 1968) (finding vacation of a stipulation after a 10-month delay would prejudice the defendant based on the loss or deterioration of evidence). The 2011 Ruling even notes that "substantially no records were apparently maintained" and that "the amount of individual financial contributions . . . were largely unknown." As a result,

Lindfors would be prejudiced because Diane no longer remembers the contributions that she made to the properties.

¶24　　　　Finally, the "protection of interests of innocent third persons" factor does not weigh in Vesper's favor. That factor generally protects a bona fide purchaser for value. Restatement (Second) of Judgments § 74 cmt. c. Here, Vesper acquired the Sherri Plaintiffs' interest in the property with full knowledge of the 2011 Ruling, the foreclosure of the Chino Valley property, and the tax lien that Mintzmyer took out against the Longhorn Ranch property. Vesper even acknowledged in a November 2016 email to Sherri that Vesper was "taking a large risk" and that Vesper "was fully aware of all of the litigation and claims between the parties" surrounding the Longhorn Ranch property. As a result, Vesper is precluded from seeking relief from the 2011 Ruling based on a significant change in circumstances. *See* Restatement (Second) of Judgments § 74.

¶25　　　　While the trial court here found that complying with the 2011 Ruling was impossible because the ruling did not state which credits were related to which of the two properties, the credits were not attached to any specific property. Therefore, the credits would have been paid from the proceeds of whichever property sold first. So, even though the Chino Valley property was foreclosed on, compliance with the 2011 Ruling was still possible. Therefore, the trial court erred by not following the distribution of proceeds in the 2011 Ruling.

¶26　　　　Nevertheless, Vesper is still entitled to credit for one-half the amount that it paid to redeem the tax lien and Lindfors conceded to this fact at trial. Lindfors also conceded that Vesper would receive the $8,106.40 credit from the 2011 Ruling since Vesper is the successor in interest to the Sherri Plaintiffs. As such, the proceeds from the sale of the Longhorn Ranch property should be distributed as follows: (1) $132,077.17 to Lindfors, (2) $8,106.40 to Vesper (as the successor in interest to the Sherri Plaintiffs), and (3) the remaining proceeds divided equally. Additionally, given the circumstances, Vesper is also entitled to $20,171.59 for one-half of the property taxes it paid to redeem the property before the remaining proceeds are divided equally. Lindfors conceded to this distribution at trial.

### 2. Abuse of Process and Punitive Damages

¶27　　　　Lindfors argues that the trial court erred by granting Vesper summary judgment on its abuse of process and punitive damages claims. It contends that acquiring an interest in property is not a legitimate use of the judicial process. We review the trial court's grant of summary judgment de

novo. *Jackson v. Eagle KMC L.L.C.*, 245 Ariz. 544, 545 ¶ 7 (2019). The elements of abuse of process are "(1) a willful act in the use of [a] judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Goldman v. Sahl*, 248 Ariz. 512, 522 ¶ 27 (App. 2020) (quoting *Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982)). "The requisite improper purpose may be found when, for example, one uses the litigation process as a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion[.]" *Fappani v. Bratton*, 243 Ariz. 306, 311 ¶ 17 (App. 2017).

¶28 The trial court erred by granting Vesper summary judgment on Lindfors' abuse of process claim. After Diane rejected Vesper's offer to purchase Lindfors' interest in the Longhorn Ranch property, Vesper emailed Lindfors' counsel stating that "we have three full time and two additional part time attorneys" and numerous "paralegals on staff," that "we know what we are doing and we are not afraid of any potential litigation," and that its $10,000 offer to purchase Lindfors' interest "still stands." When Diane rejected the offer, Vesper filed its lis pendens and complaint the following month, asserting that it had acquired sole ownership of the Longhorn Ranch property based on the Sherri Plaintiffs' quitclaim deeds. Viewing these facts in the light most favorable to Lindfors, a genuine issue of material fact exists whether Vesper used the judicial process as a club to get Lindfors to sell its interest in the property for $10,000.

¶29 Additionally, from the time that Vesper purchased the Sherri Plaintiffs' interest in the property to the time that it filed the lis pendens and complaint, Vesper had no evidence that Lindfors no longer held an interest in the property. The litigation guarantee that Vesper acquired only entitled Vesper to rely on it for purposes of determining the necessary parties to the action. *See Villa De Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, 97 ¶ 17 (App. 2011). Moreover, the litigation guarantee expressly stated that "it shall not be used for any other purpose." Likewise, the Yavapai County record that Vesper relied on in its summary judgment motion has no bearing on Lindfors' abuse of process claim because that record is from September 2018, more than a year and a half after Vesper filed its lis pendens and complaint.

¶30 While Vesper's counsel claimed at argument on the summary judgment motion that she believed Lindfors abandoned the property, Vesper did not allege in its complaint that Lindfors had abandoned the

property. Rather, it claimed that it had acquired sole ownership in the property through the quitclaim deeds executed by the Sherri Plaintiffs. Vesper's owner even admitted at his deposition that, as of December 2016, Vesper did not acquire an interest greater than the Sherri Plaintiffs' interest. A genuine issue of material fact exists whether Vesper abused the judicial process by filing its lis pendens and complaint to get Lindfors to sell its interest in the property for a nominal amount.[2] *See Fappani*, 243 Ariz. at 311 ¶ 17 (noting that an improper purpose can be found when the judicial process is used as a form of coercion to obtain property).

¶31 Vesper argues that acquiring title to property is a legitimate litigation goal. While obtaining title to property can be a legitimate litigation goal, that goal becomes illegitimate when, as here, the person seeking an interest in property knows that he has no legal right to that interest and files an action claiming ownership of that interest. Vesper's complaint alleged that it had acquired sole ownership of the property based on the quitclaim deeds executed by the Sherri Plaintiffs. But the record shows that Vesper held only a partial interest in the property and knew that Lindfors likewise held a partial interest in the property when the complaint was filed. At oral argument before this Court, Vesper's counsel even admitted that any confusion to Lindfors' title did not arise until discovery or summary judgment. A genuine issue of material fact exists whether Vesper engaged in abuse of process and therefore the trial court erred by granting Vesper's motion for summary judgment.

¶32 But the trial court properly granted Vesper summary judgment on Lindfors' punitive damages claim. "To recover punitive damages, a plaintiff must prove something more than the underlying tort." *Shepherd v. Costco Wholesale Corp.*, 246 Ariz. 470, 479 ¶ 36 (App. 2019). While Lindfors presented evidence showing that a genuine issue of material fact existed that Vesper engaged in abuse of process, it failed to present additional evidence warranting punitive damages. Because more evidence is required than the commission of the underlying tort, the trial court

---

[2] While Diane's son-in-law's trial testimony—the substance of which was attached as an affidavit to Lindfors' summary judgment reply—supports Lindfors' abuse of process and punitive damages claims, we do not consider it because we are limited to the evidence presented in summary judgment motion, *see Caruthers v. Underhill*, 230 Ariz. 513, 521 ¶ 26 (App. 2012), and introducing new evidence in its summary judgment reply was improper, *see Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 214 ¶ 20 n.3 (App. 2012).

properly granted Vesper summary judgment on Lindfors' punitive damages claim.

### 3. Lis Pendens

**¶33** Vesper cross-appeals the trial court's finding that its lis pendens was groundless, arguing that its lis pendens involved a quiet title action that affected real property. It contends that the trial court improperly considered the merits of its sole ownership claim.

**¶34** A person claiming to have an interest in property who records a document asserting that claim, knowing or having reason to know that the document is groundless or contains a material misstatement or false claim is liable to the owner of the property for $5,000 and reasonable attorney fees and costs of the action. A.R.S. § 33–420(A). In determining whether a lis pendens was wrongfully recorded, the court is limited to considering "whether the action is one affecting title to real property." *Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 395 ¶ 11 (App. 2008). "A lis pendens is groundless or has no basis only when the claim that the action affects "title to real property has no arguable basis or is not supported by any credible evidence." *Id.* "While this determination may require the trial court to look beyond the pleadings, it should not involve a decision on the merits of the underlying action." *Evergreen West, Inc. v. Boyd*, 167 Ariz. 614, 619 (App. 1991).

**¶35** Vesper knew or had reason to know that its lis pendens was groundless. Vesper claimed that it was the sole owner of the property. But before Vesper filed the lis pendens and complaint it knew that Lindfors and Diane were the record owners of the property and held an interest in the property. Vesper's report listed Lindfors and Diane as the record owners and noted that the property was the subject of a pending case between the Lindfors Defendants and the Sherri Plaintiffs. When Vesper offered to buy Diane's interest in the property, Vesper stated that it preferred to buy her interest because she "currently holds title to the property." And the Yavapai County record still showed Lindfors as the owner of the property on January 17, 2017, six days before the lis pendens and complaint were filed. As a result, Vesper's lis pendens and complaint had no arguable basis and was not supported by credible evidence. Therefore, the trial court properly found that Vesper knew or had reason to know that its lis pendens was groundless.

### 4. Attorneys' Fees

¶36 Vesper argues that the trial court erred by awarding Lindfors its attorneys' fees incurred before February 8, 2019, because it did not claim that Vesper's lis pendens was groundless until that date. Vesper does not support its argument with any legal citations and the plain language of A.R.S. § 33–420(A) refutes its argument. That statute expressly states that the owner is entitled to "reasonable attorney fees and costs of the action." A.R.S. § 33–420(A). The statute does not limit an award of attorneys' fees from the time the owner claims the lis pendens was groundless. Rather, it awards fees for the entire action. As such, the trial court did not err by awarding fees incurred before February 8, 2019.

¶37 Vesper argues last that even though the trial court reduced Lindfors' attorneys' fee award by about 40%, the fees are still excessive and unreasonable. It contends that Lindfors should not have been awarded fees incurred for selling the Longhorn Ranch property, drafting several motions, unexplained research tasks, and the parties' settlement conference.

¶38 Not only did the trial court consider these arguments when reducing the fee award from $141,775.50 to $83,855.00, the fee reduction is strikingly similar to the total fees that Vesper claimed were excessive and should not have been awarded. The total amount of fees that Vesper argued should not have been awarded was $57,296.50. After considering Vesper's arguments, the court reduced the fee award by $57,919.50. Therefore, each of the fees that Vesper complains of are accounted for in the trial court's fee reduction and Vesper does not argue that any other specific fees are unreasonable. The trial court did not abuse its discretion by not further reducing the fee award.

## CONCLUSION

¶39 For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings. Lindfors requests its reasonable attorneys' fees incurred on appeal pursuant to A.R.S. § 33–420(A). We do not consider Lindfors' request for fees incurred from its appeal because the request was raised for the first time in its reply brief and cross-appeal answering brief. *See* ARCAP 21(a)(1). But we award Lindfors its attorneys' fees and costs incurred on cross-appeal upon compliance with ARCAP 21.

