NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

AMIR REZA AZIN, *Petitioner/Appellee,*

and

KRISTINA J. MILAZZO, *Respondent/Appellee,*

*v.*

LAURA DRESSELHUYS, et al., *Intervenors/Appellants.*

No. 1 CA-CV 22-0672 FC
FILED 7-11-2023

Appeal from the Superior Court in Maricopa County
No. FC2015-091728
The Honorable Lisa S. Wahlin, Judge

**AFFIRMED**

COUNSEL

Padish Law Group PLLC, Scottsdale
By James E. Padish
*Counsel for Petitioner/Appellee*

Hildebrand Law P.C., Tempe
By Kip M. Micuda
*Counsel for Intervenors/Appellants*

<hr>

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael S. Catlett joined.

<hr>

**B R O W N**, Judge:

¶1　　　Lauren and Edward Dresselhuys ("Maternal Grandparents") appeal the superior court's order permitting Amir Reza Azin ("Father") to travel with his daughter ("the child") to Iran. Because Maternal Grandparents have not shown that the court abused its discretion, we affirm.

**BACKGROUND**

¶2　　　Father and Kristina Milazzo ("Mother") are the parents of the child, who was born in 2015. Shortly after the child's birth, Father filed a petition to establish his paternity, legal decision-making authority, parenting time, and child support. At that time, the child was living with Maternal Grandparents through an arrangement with the Department of Child Safety.

¶3　　　Maternal Grandparents intervened in Father's family law case and requested *in loco parentis* sole legal decision-making authority, with supervised parenting time for both parents. They also asked the superior court to "bar [Father] from obtaining *any* travel Visa, passport [or] other such document for [the child] without a specific court order and bar him from taking her more than fifty (50) miles from [Maternal Grandparents'] home . . . without a court order."

¶4　　　A year later, the parties signed an agreement addressing legal decision-making and parenting time (the "Agreement"), which was later adopted by the superior court. Under the Agreement, Father and Maternal Grandparents would share joint legal decision-making authority for one year, but thereafter Father has sole legal decision-making authority. The Agreement also grants the parties shared parenting time with the following restriction: "[I]f Father wishes to take [the child] outside the United States, he must either obtain [Maternal Grandparents'] specific written agreement or a court order." The Agreement also states that "[t]he parties agree these

terms are in the child's best interests until circumstances manifest and are proven otherwise."

¶5 Father's ability to travel outside the U.S. continues to be a point of contention between the parties. In 2021, they attended mediation but were unable to resolve the issue. Father then filed a petition to modify the Agreement, which he later amended for procedural reasons. In his petition, he requested a court order permitting him to travel to Iran with the child so she could meet her paternal grandparents. Alternatively, he asked the court to permit them to travel to the United Arab Emirates so the child could meet her paternal grandparents there.

¶6 Maternal Grandparents opposed the petition, expressing safety concerns regarding travel to the Middle East and their fear that Father might not return from the visit. They also alleged that if Father were to abscond with the child, or if third parties were to abduct her, there would be no civil recourse for them to obtain her safe return because Iran is not a member of the Hague Convention on the Civil Aspects of International Child Abduction.

¶7 In August 2022, the superior court held a trial on Father's petition. The court heard from Father, Maternal Grandmother, and Maternal Grandparents' expert witness Abed Awad. Following the trial, the court granted Father's request to travel to Iran with his child, subject to a secured cash bond of $100,000. This order was a final judgment under Arizona Rule of Family Law Procedure 78(c). Maternal Grandparents filed an expedited motion to reconsider and an expedited motion to stay the order. Following full briefing, the court denied both motions.

¶8 Maternal Grandparents timely appealed the superior court's order permitting Father to travel with the child to Iran. They also requested that we stay the court's order under Arizona Rule of Civil Appellate Procedure 7(c), which we denied. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶9 Maternal Grandparents argue the superior court abused its discretion by "compelling the child's travel to Iran" because it is "contrary to the child's best interests."

¶10 We review an order addressing legal decision-making for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). A court abuses its discretion when it "commits an error of law in reaching a

discretionary decision or when the record does not support" its decision. *Id.* We do not reweigh conflicting evidence or second-guess the court's credibility assessments on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). And we will affirm the court's ruling for any reason supported by the record. *Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4 (App. 2008).

**¶11** As a threshold issue, we recognize that although Father framed his request to the superior court as a parenting time issue under A.R.S. § 25-411(J) (modification of legal decision-making or parenting time), the issue presented to the court is governed by A.R.S. § 25-410(A) (judicial supervision). Section 25-410(A) provides that except as otherwise agreed to by the parties, a parent designated as the sole legal decision-maker "may determine the child's upbringing" unless the court limits that authority by finding that "the child's physical health would be endangered or the child's emotional development would be significantly impaired" without the limitation.

**¶12** The Agreement's legal decision-making provision states that "[a]fter twelve (12) months, Father shall have sole legal decision-making, except if Father wishes to take [child] outside the Unites [sic] States, he must either obtain [Maternal Grandparents] specific written agreement or a court order." At most, this provision limits Father's ability to exercise his legal decision-making authority in the sense that if Maternal Grandparents do not approve of him taking the child out of the country, he must obtain a court order. But even then, the provision would only affect his ability to parent the child as he deems appropriate if Grandparents can meet the heightened standard under § 25-410(A) to justify judicial interference.

**¶13** And though Father petitioned to "modify" the parties' parenting plan he did not request any material changes to the Agreement. Instead, he essentially requested enforcement of the Agreement, which meant he needed to seek a court order allowing his child to travel to Iran. The superior court's order addressed the parties' arguments relating to parenting time and § 25-411(J), but the court specifically rejected "the argument that Father seeks to modify the Agreement." Furthermore, the relief granted flows logically from the terms of the Agreement, which specifically contemplated issuance of a court order addressing whether Father had permission to travel with the child to Iran to visit the paternal grandparents.

**¶14** Maternal Grandparents argue the superior court erred by relying on *In re Marriage of Friedman & Roels*, 244 Ariz. 111 (2018), because the court applied the wrong legal standard when it found that "Father is a

fit parent, who will act in the child's best interests." This "fit parent" presumption, they contend, only applies in cases concerning third-party custody rights, and not in cases involving parenting time and legal decision-making authority.

¶15 Contrary to Maternal Grandparents' assertion, the supreme court's holding in *Friedman* that "a parent is presumed to be 'fit' until he or she has been adjudicated unfit" is not restricted to third-party custody cases. *Id.* at 119, ¶ 33. For instance, in *Paul E. v. Courtney F.*, 246 Ariz. 388 (2019), the supreme court held that under § 25-410(A) "the court may limit the sole legal decision-maker's authority only if 'the child's physical health would be endangered or the child's emotional development would be significantly impaired,' circumstances that presumably would occur infrequently with a fit parent making decisions." *Paul E.*, 246 Ariz. at 393–94, ¶ 20. This standard is "patently more onerous than the 'best interest' test." *Id.* at 394, ¶ 21 (quoting Section 408 of the Uniform Marriage and Divorce Act).

¶16 Here, the superior court found that it was in the child's best interests to visit Iran with Father and meet paternal grandparents and other extended family. And while the court reached this conclusion in the framework of parenting time, the court's findings are still relevant to the § 25-410(A) legal decision-making analysis. Furthermore, a finding that travel would be in the child's best interests necessarily means that Maternal Grandparents have not met the higher burden of showing that travel would endanger the child's physical health or impair her emotional development. *See id.* Because we may affirm for any reason supported by the record, the court did not abuse its discretion. *See Pettit*, 218 Ariz. at 531, ¶ 4. And because this dispute is governed by § 25-410(A), rather than § 25-411(J), we need not address whether the court misapplied *Lehn v. Al-Thanayyan*, which addressed a parent's right to exercise *parenting time* in a foreign country. 246 Ariz. at 284–86, ¶¶ 20–28.

¶17 Maternal Grandparents contend the superior court ignored a dozen particular facts and arguments they presented at trial. Many of these challenges ask us to credit Maternal Grandparents' own testimony or the testimony of their expert witness over Father's testimony, but we will not reweigh the evidence on appeal. *Id.* at 284, ¶ 20.

¶18 Also, in its order the court made detailed findings supported by the record regarding Father's ties to the United States, Maternal Grandmother's concerns about travel to Iran, and Abed Awad's expert testimony on Iran. Based on these findings, the court determined that

Father has strong ties to the U.S. that indicate he will return to the U.S. following his visit to Iran. It also found that Father's desire for the child to meet her paternal grandparents is a reasonable and valid reason to travel; and that it is in the child's best interests. Because these findings are supported by the record, we conclude that the court did not abuse its discretion. *See Smith v. Smith*, 253 Ariz. 43, 45, ¶ 9 (App. 2022).

**¶19** Finally, Maternal Grandparents argue in their reply brief that the court erred because it did not make specific findings on the record pursuant to A.R.S. § 25-403(B). They contend the statutes governing legal decision-making and parenting time generally require that a court make written findings regarding the child's best interests. Maternal Grandparents have waived this argument by not raising it in their opening brief. *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶ 11 (App. 2022) (appellate courts will generally decline to consider arguments made for the first time in a reply brief).

**¶20** Even so, express findings are not required when a court imposes limitations on a parent's exercise of sole legal decision-making under A.R.S. § 25-410(A). *See, e.g., Hart v. Hart*, 220 Ariz. 183, 187, ¶¶ 16–17 (App. 2009) (recognizing that A.R.S. §§ 25-410(B) and 25-411(D), now subsection (J), contain "no requirement, as there is in A.R.S. § 25-403(B), that findings be reduced to writing or stated on the record."). Although under § 25-410(A) the court must "find" certain facts before granting the requested relief, there is no requirement that the court's findings be reduced to writing or stated on the record. *See Hart*, 220 Ariz. at 187, ¶ 16. Under these circumstances, we find no error.

**¶21** Both parties request their attorneys' fees and costs on appeal under A.R.S. § 25-324(A), which authorizes a discretionary fee award based on disparity of financial resources and reasonableness of positions taken in the litigation. In our discretion, we decline to award attorneys' fees to either party. As the successful party on appeal Father is awarded taxable costs subject to compliance with ARCAP 21.

**CONCLUSION**

**¶22** We affirm.

